■ In the Matter of the Claims of HELEN MARKOWITZ et al., Appellants, v. MACK MARKOWITZ, INC., et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondents.— HAMM, J. The decedent was president and general manager of an automobile sales and service agency which bore his name. The board, in reversing the decision of a Referee and disallowing benefits, found that "the decedent left the employment premises and crossed the street to a luncheonette where he obtained sandwiches and two containers of coffee" and that "While recrossing the street he was struck by an automobile", sustaining injuries which resulted in his death. There was evidence that the decedent had no particular set hours of work, that he frequently arrived at 7:15 in the morning, had breakfast in his office, "would work right through" and that he often worked at night since there were customers who preferred to deal with him directly. There was also testimony that it was his general practice to order lunch to take out and that he rarely remained to eat his lunch in the restaurant premises. The secretary-treasurer of the employing corporation testified substantially as follows: One of the sandwiches and one of the containers of coffee had been ordered for her. She and the decedent were both "pressed for time" and contemplated working as soon as the sandwiches were brought back. They were "too busy to spare the time to go out", and "had lots of things to take up." The assistant sales manager of the corporation testified that the decedent "had a lot of things to prepare" and that there was work for him to do "during lunch time, and all that day." To the extent that the decision appears to have been predicated on the finding that the claimant was an inside worker, the board misapprehended the rule because that fact is not controlling. As we said in *Matter of Caporale* v. *State Dept. of Taxation & Finance* (2 A D 2d 91, 92, affd. 2 N Y 2d 946), in affirming an award for injury in recrossing the street after a "coffee break": "The question basically is whether the employment was 'not interrupted' (*Matter of Bollard* v. *Engel,* 278 N. Y. 463, 466) and on that question the fact that an employee is an inside or outside worker is not always conclusive." The board found that the claimant's going for lunch "was purely personal" and that, apparently as a corollary, he was "upon a personal mission unconnected with his employment." But the fact that lunch may perhaps always be regarded as a personal mission does not render injuries

noncompensable provided other facts requisite to recovery exist. To the extent that the decision appears to have been predicated on a finding that going for lunch was purely personal the board appears to have misapprehended the rule as the board found to exist an exceptional feature advantageous to the employer. While the board was not required to accept the testimony of the restaurateur and of the employer's secretary-treasurer (*Matter of Manolakis* v. *Edison S. S. Corp.*, 15 A D 2d 845) the board nevertheless found that the decedent was returning with sandwiches and containers of coffee as testified. The decedent's "recrossing the street" with his own lunch and that of the secretary-treasurer for the purpose of expediting the continuance of mutual work would seem to be inconsistent with the board's conclusion that the decedent was "upon a personal mission unconnected with his employment" (cf. *Matter of Bollard* v. *Engel, supra*; *Matter of Goldberg* v. *Gold Medal Farms*, 18 A D 2d 951). The rapid excursion would seem to have been rather an effort expended in the employer's interest to conserve the time of two of the employer's officers. The board's finding that decedent's "going for his lunch was purely personal and in no way furthered the interests of the employer" is equivocal and not completely relevant and certainly not decisive of the issue, which is, whether decedent's immediately returning with his and his coworker's lunch, to enable both to continue their work without interruption, rendered the accident compensable. In this form, and without some other indication, the determination is legally insufficient and, in addition, is not supported by substantial evidence. In all the circumstances we think there should be a reconsideration of the record. Decision reversed, and case remitted, with costs to appellants. Gibson, P. J., Herlihy and Aulisi, JJ., concur; Reynolds, J., dissents, and votes to affirm, in the following memorandum: The board in this case has decided issues of fact and credibility and set forth the following solid and self-explanatory reasons and conclusions in its decision: "The Board finds, after review, that the decedent left the employer's premises upon a personal mission unconnected with his employment. The claimant was an inside worker and going for his lunch was purely personal and in no way furthered the interests of the employer. The Board therefore finds that the accidental injuries did not arise out of and in the course of employment." It seems to me improper for us to reverse and remit and request further findings or suggest different ones when the findings are so clear and comprehensive. It has long been the rule in this State that, *absent special circumstances*, an employee injured while away from his employer's premises and while going to or from lunch is not in the course of his employment and the accident does not arise out of the employment (*Matter of Jamison* v. *New York State Temporary Comm. on Agric.*, 308 N. Y. 683; *Matter of Layton* v. *Spear & Co.*, 287 N. Y. 610; *Matter of Johnson* v. *Smith*, 263 N. Y. 10; *Matter of McInerney* v. *Buffalo & Susquehanna R. R. Corp.*, 225 N. Y. 130). Certain exceptions have been made and approved by case law; permissive coffee breaks; rest periods; relieved time periods; and cases where an employee going across town, for example, stops for a quick lunch en route, etc. But here we have the owner of the business and he himself decided when to embark on personal errands; he was subject to his own directions. It cannot reasonably or sensibly be argued that because he was a busy executive he was at all times of the working day in the course of his employment. Implicit, in the majority's proposed reversal is the necessary assumption that the quick trip to the luncheonette was hastened by the pressure of decedent's business activities on the date in question. Without such an assumption the trip by claimant to secure lunch would, of course, be a personal venture. The existence of such special circumstances is a factual determination and

thus clearly within the province of the board. Here after noting that decedent had crossed the street to procure sandwiches and two cups of coffee and had been struck on his return the board's opinion states: "The Board finds, after review, that the decedent left the employer's premises upon a personal mission unconnected with his employment. The claimant was an inside worker and going for his lunch was purely personal and in no way furthered the interests of the employer. The Board therefore finds that the accidental injuries did not arise out of and in the course of employment." In view of the instant record, this is a clear rejection of claimants' argument that the trip was necessitated by the pressure of business. The board did not have to accept the testimony of the secretary-treasurer, who also happened to be decedent's sister, that decedent's reason for a hurried lunch was based on business pressure and "The disbelief by the board of an assertion of this kind is not an absence of substantial evidence in support of a negative finding." (*Matter of Rothschild* v. *Flatbush Jewish Center*, 18 A D 2d 1045; see, also, *Matter of Wood* v. *Colonial Tavern & Rest.*, 22 A D 2d 984; *Matter of Finn* v. *Merritt, Chapman & Scott*, 20 A D 2d 731; cf. *Matter of Wolff* v. *Jaralomon & Co.*, 4 A D 2d 923.) The testimony of the assistant sales manager was merely that decedent had certain objectives he wished to achieve before he went to Florida for a vacation on the next day. Some of these decedent's sister eventually admitted were not connected with employment. This testimony was of a general nature and the board could give it the weight it desired. The credibility of these witnesses and the weighing of their stories were peculiarly for the board. Further the record clearly reveals that decedent rarely if ever took his lunch at the luncheonette, he either sent out for it or picked it up and took it back to his office himself. The majority apparently weighing the facts, seems to feel this supports the premise of a "business lunch", but from such a universal practice it is also reasonably inferable that it was a matter of personal choice of this owner to eat his lunch in the seclusion of his office rather than in the luncheonette. The burden of proving that decedent's excursion to secure lunch was designed to conserve time and thus was in the employer's interest was on the claimant. This burden the board has found was not met, and I see no reason to disturb its determination which is based upon substantial evidence. *Matter of Bollard* v. *Engel* (278 N. Y. 463) cited by the majority is limited by *Matter of Layton* v. *Spear & Co.* (287 N. Y. 610) and not followed by the Court of Appeals in *Matter of Lovett* v. *Buck* (260 App. Div. 824, revd. 285 N. Y. 526) and *Matter of Jamison* v. *New York State Temporary Comm. on Agric.* (283 App. Div. 903, revd. 308 N. Y. 683). It is no precedent for this case being decided on entirely different facts and reasoning. It has been considered *sui generis*. In *Bollard* the board found the incident compensable and the Court of Appeals in reversing the Appellate Division merely affirmed the factual findings of the board. In the instant case the board disallowed the claim. The majority opinion seems to say that the board apparently misunderstood the law, or that it could have drawn different inferences from the testimony. I am sure that the board's decision shows very clearly that it understood the law, and was aware that in the exercise of its fact-finding power it has the right to draw inferences and could have drawn different inferences here if it chose. On this record it seems plain that they drew the inferences justified by the evidence. I am confident that the fact that there was a recovery by decedent's representative of $42,500 in the third-party action had nothing to do with their determination. The decision should be affirmed.