ADKINS, Justice.
The Petitioner, George Gilbert Reynolds, was employed by Respondent, Ferman Oldsmobile Company, as a parts delivery man. He was injured in an accident while driving home for lunch in a company truck. The Judge of Industrial Claims held in awarding compensation to Mr. Reynolds that the accident arose out of and in the course of his employment. On this exact question the Industrial Relations Commission reversed and we granted certiorari.
On March 10, 1969, Mr. Reynolds began work as a parts delivery man at an average salary of $64.00 per week. The workday began at 8:00 a. m. and ended at 5:30 p. m. The employees received an hour for lunch. They were not compensated during the lunch hour and were required to punch in and out on the time clock. No specific time was scheduled for lunch. The claimant’s supervisor, Mr. Poulnot, the parts and accessories manager, attempted to schedule the deliveries and related work so that the employees were free around noon.
When Petitioner was hired, his use of company vehicles for transportation other than that directly related to work did not arise and apparently was not even considered.
It is not necessary when faced with the question of whether an accident arose out of and in the course of employment that the use of company vehicles for transportation to and from work be explicitly set out in the employment agreement. This fact can be implied from the general practices or customs of the employer. This Court in Huddock v. Grant Motor Company, 228 So.2d 898 (Fla.1969) said:
“It has long been established in Florida that when an employer agrees in the original employment contract to provide an employee transportation to and from his place of employment, an injury to the employee which occurs while he is being transported in compliance with the agreement is considered to have arisen out of and in the course of his employment. Transportation of an employee between his home and place of employment may become an incident to and part of a contract of employment, even though it is not included in the initial employment contract, under the following well established principle:
“ ‘The general rule is that injuries sustained by a workman while going to and returning from his place of work are not considered as arising out of and in the course of his employment. But, injuries sustained by the workman while he is provided with transportation when going to or returning from his work are considered as arising out of his employment when such transportation is the result of an express or implied agreement between the employer and his workman or when it has ripened into a custom to the extent that it is incidental to and part of the contract of employment, or when it is with the knowledge and acquiescence of the employer, or when it is the result of a continued practice in the course of the employer’s business, and which practice is beneficial to both the employer and employee.’ ” (pp. 899, 900.)
The case sub judice is just such a case. On the first day of employment, Mr. Reynolds was not paid for lunch since he worked straight through the lunch hour delivering parts to dealers out of the Tampa metropolitan area. On the second day, he was at Ferman Oldsmobile Company at noon and walked seven blocks to the nearest restaurant. There he saw other employees eating lunch. They had driven company vehicles to the restaurant. After talking with these men, both at the restaurant and later at work, he learned that they regularly drove company trucks to and from lunch. Armed with this knowledge, claimant on the third day asked and was given permission by Mr. Poulnot to use the truck for transportation to and from lunch. No restrictions were placed on this use except *135 that another truck had to be available. The claimant received no instructions regarding where he could take the truck. Presumably, he could go anywhere. Mr. Poulnot has been employed at Ferman Oldsmobile Company for eighteen years. If there were restrictions, he certainly would have spelled them out at that time. Consequently, Mr. Reynolds drove home that day, fixed lunch and returned well before the end of the lunch hour.
The trucks are designed, not only for the delivery of parts, but also for advertising purposes. The company name, Ferman Oldsmobile, is painted all over the trucks. This advertising is beneficial to the company. The benefits are continuous in nature. As long as the trucks are on the road, benefits inure to the employer regardless of what purpose the employee is using the truck.
On the day of the accident, Monday, March 17, 1969, the Petitioner had made several deliveries in the morning and had returned to Ferman Oldsmobile by noon to reload the truck. While trying to decide which deliveries he was to make next, his immediate supervisor, the man in charge of filling the delivery orders, directed Mr. Reynolds to go to lunch and return for the next set of deliveries. Acting on this order, at his supervisor’s direction, he punched out, took the company truck, and started for his home. The accident occurred on the way home.
In Heller Bros. Packing Co. v. Lewis, 155 Fla. 430, 20 So.2d 385 (1945), this Court was faced with an analogous problem. There a young man was employed to pick fruit for the Heller Bros. Packing Company. At noontime, he told the foreman that he did not have any lunch. The foreman, thereupon, directed Lewis to take the “Jeep” truck and go to lunch at a restaurant a mile or so away. While returning from lunch, the truck was involved in an accident and Lewis was injured. This Court held that the accident arose out of and in the course of young Lewis’ employment since he was directed to take the truck and go to lunch. The logic and reasoning behind this decision is clearly stated by the Court:
“The record here discloses that the fruit in the grove where the appellee was picking was not good. Trucks and drivers were idle because of the lack of fruit. The foreman well knew that a hungry fruit picker could not render very efficient services and a lunch would enhance the interest of both the employer and employee in that food would create the strength and reserve of the employee to work, thereby resulting in more efficient services in gathering fruit in behalf of the employee. The interest of the employer was advanced by the foreman in directing the employee to take the appellant’s ‘jeep’ and go to Sunset Point and obtain lunch.” (Heller Bros. Packing Co. v. Lewis, 20 So.2d 385, 387)
The interests of both the employer and employee in the case sub judice are served in a like manner. Further, like young Lewis, Mr. Reynolds was directed by his immediate supervisor to go to lunch. Contrary to Respondent’s argument, the critical element is not where the employee was directed to eat lunch but that he was directed to eat. These two factors, plus the incidental benefit of advertising combined with the implied permission to use the company truck, bring this accident within the scope of the Florida Workmen’s Compensation Act as an injury arising out of and in the course of claimant’s employment. For other interesting and close cases involving this question see: Lazarus v. Jayso Electronics Corp., 25 A.D.2d 806, 269 N.Y.S.2d 253 (1966); Markowitz v. Mack Markowitz, Inc., 22 A.D.2d 1001, 255 N.Y.S.2d 28 (1964); Bollard v. Engel, 254 App.Div. 162, 4 N.Y.S.2d 363 (1938); State Compensation Insurance Fund v. Workmen’s Compensation Appeals Board, 67 Cal.2d 925, 64 Cal.Rptr. 323, 434 P.2d 619 (1967); and J. C. Carlile Corporation v. Antaki, 162 Colo. 376, 426 P.2d 549 (1967).
*136 Accordingly, the order of the Industrial Relations Commission is reversed and the cause remanded with directions to reinstate the compensation order of the Judge of Industrial Claims.
It is so ordered.
ROBERTS, C. J., and ERVIN, CARLTON and BOYD, JJ., concur.