No. 16,382.

NATIONAL FUEL COMPANY ET AL. *v.* ARNOLD ET AL.

(214 P. [2d] 784)

Decided January 23, 1950.

Mr. FORREST C. NORTHCUTT, for plaintiffs in error.

Messrs. WOOD & RIS, for defendant in error Arnold.

Mr. JOHN W. METZGER, Attorney General, Mr. ALLEN

Moore, Deputy, Mr. Donald C. McKinlay, Assistant, for defendant in error Industrial Commission.

*In Department.*

Mr. Chief Justice Hilliard delivered the opinion of the court.

An Industrial Commission inquiry. It appears that November 22, 1938, claimant Arnold, while employed as a miner by plaintiff in error National Fuel Company in its coal mines, and in the course of his employment, sustained an accidental injury; that December 14, 1938, both plaintiffs in error, proceeding in writing, admitted liability to "claimant for compensation disability caused by accidental injury at $14.00 per week, beginning Dec. 3rd, 1938, and continuing during disability. Also for such permanent disability as may hereafter be determined to exist;" that June 24, 1940, claimant continuing to be permanently and totally disabled, plaintiffs in error petitioned for an order requiring him to submit to medical examination and surgery, failing which, that, "his right to weekly indemnity or compensation which shall accrue and become payable during the period of such refusal shall be barred."

September 11, 1940, there was a hearing on that petition, the parties appeared by counsel, and testimony was taken. September 17, 1940, a referee of the commission found that the proposed examination and surgery promised to improve claimant's condition and ordered him to submit thereto. October 3, 1940, the commission affirmed and adopted the order of its referee. Pursuant to such order, claimant submitted to examination and surgery, and the physician who conducted the examination and performed the surgery reported at length thereon, concluding by saying: "Claimant is totally disabled for any kind of manual work though there are undoubtedly sedentary occupa-

tions in which he might be gainfully employed if he can be so trained." Subsequently, plaintiffs in error, predicating their action on such report, advised the commission that payment of compensation will not be suspended in the interim, and requested that the matter be "set for hearing to determine by formal award the date of termination of the claimant's temporary total disability and the degree of his permanent disability."

In conformity with the foregoing request, a referee of the commission, proceeding November 19, 1941, conducted a hearing in full form, receiving evidence and hearing counsel, at the conclusion of which the referee announced that a written order would follow. November 24, 1941, the referee found and ordered as follows: "Upon hearing it appeared that claimant sustained an accident arising out of and in the course of his employment on November 22, 1938, and that as a result of his accident, he received injuries to his back and pelvis, which caused him to be totally disabled from the date of his accident. It further appears that he will be permanently and totally disabled for the duration of his lifetime. His average weekly wage was $34.50. He was born December 5, 1913 * * * Therefore it is ordered: That respondents pay compensation to the claimant at the rate of $14.00 per week * * * for the rest of claimant's natural life." No review was sought, hence the order became final.

Although no point is made thereon, it is informative to state that at intervals, claimant sought partial lump sum settlements, some of which were granted, and others were refused or withdrawn. In working out the mathematics resulting from such allowances, it appears that the existing order is that the compensation be dischargable at the rate of $59.52 per month instead of $14.00 per week, as previously.

February 20, 1948, claimant, setting forth his desire to take a "Secretarial Course" in a Denver business college, sought an order for an allowance of $405.00,

reciting that "due to the increased cost of living, it is necessary that he secure work which he is physically able to do, to supplement his monthly payments of compensation ordered by the commission." March 31, 1948 (some formal postponements intervening), plaintiffs in error, instead of answering claimant's petition, filed a petition to "reopen the claim," alleging that "claimant's physical condition has changed, in that he has improved," and prayed that the commission reopen the cause of its own motion. Proceeding thereon April 8, 1948, the commission ordered a further hearing to be held May 3, 1948, before a referee, "to determine whether there had been change in the claimant's condition." September 29, 1948, the referee found that, "since the order of the commission dated November 24, 1941, there had been no change of condition of the claimant resulting from the accident," but added that "error" obtained in the original order of the commission, in that instead of being permanently and totally disabled, claimant suffered only 75 per cent permanent disability as a working unit, and ordered that he be paid "no further compensation." Although at first the commission approved its referee's finding and order, it finally vacated and set aside its order to that effect, and affirmed and adopted its original order of November 24, 1941, ordering, "that payments of compensation be resumed in accordance therewith." March 5, 1949, plaintiffs in error sought review in the Denver district court, and November 4, 1949, the court ruled adversely to them and approved and affirmed the findings and award of the commission.

At this point we pause to set forth the details of claimant's injuries, on the basis of which the commission found and determined, and refound and redetermined, as already stated, that claimant was permanently and totally disabled, and would continue to be and remain in that condition for the "duration of his lifetime." In the terminology of the testifying representative of the

medical profession, claimant "had a fracture of his twelfth thoracic vertebra with injury to the end of the spinal cord and the beginning of the cauda equina, with considerable motor and sensory paralysis below that level." Or, as recited in the order of November 24, 1941 (reaffirmed in the order of February 4, 1949), claimant "received injuries to his back and pelvis, which caused him to be totally disabled from the date of the accident." More particularly, the uncontradicted testimony was to the effect that both of claimant's feet are completely and permanently paralyzed, which is partially true as to his legs; that he walks with the aid of canes or crutches, and by throwing his legs forward from the hips. Moreover, and as a further result of his accident, he does not have normal control of his bowels and bladder. That from the date of the accident claimant has been, and now is, hopelessly crippled and disabled physically, as found by the commission, which finding was approved by the trial court, as we think, does not admit of doubt. In addition, it is not contended that the issue presented at the hearing now in question, namely, that, "claimant's physical condition has changed, in that it has improved," has been sustained; rather, the basis of the challenge by plaintiffs in error, although not expressly so stated, is· that at times claimant has been able to secure employment, and on occasion at a considerable wage. Therefore, as argued, his compensation should be discontinued or materially reduced. While, the record considered, an affirmance of the judgment based on the failure of plaintiffs in error to sustain their allegation of improved physical condition of claimant would be in order, we are disposed to widen the scope of our inquiry, and determine whether the employment enjoyed by claimant in the circumstances appearing, may be availed of by plaintiffs in error in their effort to work cancellation or diminution of claimant's compensation.

First of all, as we think, it is important to note that

at the time of the accident, claimant was twenty-five years of age, healthy and physically sound, and had been married slightly longer than one year. The first employment of moment that he had following the accident was during the war, when civilian laborers were scarce. It appears that claimant's wife, who had joined the WACs, became personnel officer at an air base at Chico, California, and was able to secure for claimant a position as a civilian clerk, the duties of which contemplated clerical and supervisory work at the air base already mentioned. He prepared for the work by taking a typewriting course at Opportunity School in Denver. Such preparation was on his own initiative, and wholly without suggestion or assistance of plaintiffs in error. His employment at the air base lasted for something like two years, his salary starting at $1,200.00 a year, and finally rose of $1,800.00 a year. The employment terminated in December, 1945, and claimant returned to Denver. Thereafter, for short periods, he did some bookkeeping at Tiny Town. Subsequently, he worked briefly as a cook at a night club in Rangely, but at the end of two months he was discharged because of physical inability to do the work. Later, he was employed at Tower Cafe, Rangely, cooking and bookkeeping, receiving seven or ten dollars per day, depending on his physical ability—varying from time to time—to perform both tasks. At the time of the hearing, he was not employed, but during the year preceding he had worked approximately eight months, and received forty-nine or seventy dollars per week, depending as already stated. His employment in Rangely was during the oil boom, when there was great demand for unskilled labor. During the period since his accident, he had other employment at infrequent intervals, and at undisclosed wages. For the entire period of eleven years, he earned approximately $5,500.00.

■■ If we were to dismiss from consideration the partial paralysis of claimant's legs, and the ever-present

inability to control his eliminations (not justly to be done), and confine our inquiry to the total paralysis of claimant's feet, still we cannot think the commission erred in finding that claimant is permanently and totally disabled in the true conception of the purposes of. the Industrial Commission Act. "The loss of * * * both feet or both legs * * *, by injury in or resulting from the same accident, shall prima facie constitute total and permanent disability to be compensated according to the provisions of this section." '35 C.S.A., c. 97, §356, second par. "For the purpose of this schedule, permanent and complete paralysis of any member as the proximate result of accidental injury shall be deemed equivalent to the loss thereof." Ibid., §352, (b), "Our Workmen's Compensation Act is highly remedial, and we have repeatedly held that it should be given a liberal interpretation and application in order to fully effectuate its purposes." *Great American Indemnity Co. v. Industrial Commission,* 114 Colo. 91, 162 P. (2d) 413. "In determining the extent or degree of disability of an injured workman upon the facts of each case, it is axiomatic that the Industrial Commission is vested with the widest possible discretion with the exercise of which the courts will not interfere." *Byouk v. Industrial Commission,* 106 Colo. 430, 105 P. (2d) 1087. See, also, *Rio Grande Motor Way v. De Merschman,* 100 Colo. 421, 68 P. (2d) 466; *New York Indemnity Co. v. Industrial Commission,* 86 Colo. 364, 281 Pac. 740.

█ We do not believe, the record fairly appraised, that either the employer or the insurance carrier involved may take advantage of the fact that this most unfortunate young man, who, persevering to the utmost, has at times, and under unusual circumstances, been able to obtain some employment, and work his undoing in the matter of compensation vouchsafed by statutory enactment. They have not pursued the course outlined in section 356, supra, that is to say, obtained

"suitable employment for such disabled person which he can perform," etc. In consequence, they are not in position to complain on that score. *New York Indemnity Co. v. Industrial Commission, supra.*

Plaintiffs in error sought to introduce original evidence at the trial in the district court, and complain of the exclusion thereof. We cannot think the court erred. "Trial," reads the statute, "shall be to the court without a jury and upon the record of the commission returned to said court." '35 C.S.A., c. 97, §384.

Let the judgment be affirmed.

Mr. Justice Hays and Mr. Justice Alter concur.