No. 20,141.

THE COLORADO FUEL AND IRON CORPORATION *v.* THE
INDUSTRIAL COMMISSION OF COLORADO,
AND JOE TAMBURELLI.
(379 P. [2d] 153)

Decided November 5, 1962.   Rehearing denied March 11, 1963.

19

Messrs. Welborn and Dufford, Mr. Elmer P. Cog-
burn, for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank
E. Hickey, Deputy, Mr. Peter L. Dye, Assistant, for de-
fendant in error the Industrial Commission of Colorado.

Messrs. Graham and Scheunemann, for defendant in
error Joe Tamburelli.

*En Banc.*

Mr. Justice Frantz delivered the opinion of the Court.

By reason of circumstances called to its attention, the Industrial Commission, on its own motion, reopened the claim of Joe Tamburelli for workmen's compensation against his employer, the Colorado Fuel and Iron Corporation. After a hearing, the commission found and determined that claimant's condition had worsened since the entry of a prior award, and that he was presently permanently and totally disabled. The supplemental award, based upon such finding and determination, was attacked in the district court where, after hearing, it was affirmed. The judgment of affirmance is the subject of assault here by writ of error.

Tamburelli was adjudged by the commission to be permanently and totally disabled by its order entered on January 31, 1961. From the evidence it appears, and the commission found, that he was 58 years of age, unlettered, having had no schooling whatever, and that he had been a coal miner by occupation for more than 32 years. He had sustained three injuries to his back while working for the employer, all of which necessitated surgery.

Awards of compensation were made in proceedings held following these injuries. A determination that Tamburelli had suffered a permanent and partial disability of 30% as a working unit formed the basis of the award entered after the hearing held in regard to the second injury. This injury occurred in May 1952, and upon resumption of employment, Tamburelli was assigned to do light work. In July 1957 he was returned to heavy work, and on November 24, 1958, while performing his assignment, he injured his back for the third time.

As the result of a hearing on a claim concerning this third injury, an order was entered in which it was said:

"The parties at this hearing stipulated that the claimant has sustained permanent but partial disability to the extent of 50% as a working unit, 30% of which is attributable to his previously-determined accident, and 20% of which is attributable to the accident which is the subject of this Order."

A supplemental award in accordance with such ascertained disability was entered on June 21, 1960.

Both claimant and employer were advised by the doctors that claimant should not engage in any heavy toil; that his labors thereafter must be limited to light work. Tamburelli's efforts to secure releases from the doctors to permit him to work were of no avail; they would allow him to perform only light work. The employer had no such work available, and eventually its mining enterprise ceased operating.

In order to establish total and permanent disability, Tamburelli showed the environmental factors of his life, already adverted to; his injuries and the disability flowing therefrom; and his late efforts to obtain work from his employer. A doctor testified that he had examined Tamburelli shortly before the hearing and concluded that "he was quite disabled, had previously given him 50% as a working unit, but I felt that he was unable to work as a coal miner."

The referee had made an award on June 21, 1960, based in great part on the stipulation of the parties. Believing that an error had been committed in the award, the employer petitioned for a review. The petition lay undetermined, and the claim was in this posture when the commission, on its own motion, directed that the order of June 21, 1960, be reopened.

Whether the action of the commission, in directing that the order be reopened, was regular in the premises can make no difference in the outcome of this case. Regularity of action could be of importance in workmen's compensation claims, but it is doubted that a question of regularity exists here, as it is proposed now to show.

■ The order of the referee "shall be the final award of the commission, unless a petition for review is filed as provided in this chapter." C.R.S. '53, 81-14-4. "Any party in interest who is dissatisfied with the order entered by the referee may petition to review the same and *the referee* may *reopen* said case, or may amend or modify said order, and such amended or modified order shall be a final award unless objection be made thereto by further petition for review. . . ." (Emphasis supplied.) C.R.S. '53, 8-14-6.

Since the matter was still pending before the commission on the employer's petition to review the June 1960 award, the referee still had statutory authority to modify or amend the award; it was not a final award.

■ "Upon its own motion on the ground of error, mistake or a change in condition, the commission . . . may review *any* award and on such review, may make an award ending, diminishing, maintaining or increasing compensation previously awarded, subject to the maximum and minimum provided in this chapter. . . . No such review shall affect such awards as regards any moneys already paid." (Emphasis supplied.) C.R.S. '53, 81-14-19. If the statutory conditions are present, it would appear that the commission can reopen any award, whether interim or final, and adjust compensation in accordance with the standards of the act.

The stipulation is evidence only of the then existing condition of Tamburelli. *Kansas Exploration v. Wright,* 173 Okl. 411, 49 P. (2d) 65; *Ferraro v. Zurcher,* 12 N.J. Super. 23, 79 A. (2d) 473. It did not pretend to prognosticate change or no change of condition. Indeed, prediction in this respect, under the guise of a stipulation, might raise a serious question of authority in the commission to use it to form the basis for commission action.

Recognizing variance in statutory language, it has been said that in "most jurisdictions, if compensation agreement or statement has been entered between the

parties and thereafter there is a change in the condition of the employee, on proper application or petition the agreement or settlement may be reviewed, and compensation increased or diminished, or the payment of compensation may be suspended or terminated." 101 C.J.S. 308, §896. States having statutes very like ours have so decided. *Lincoln Coal Co. v. Watts,* 275 Ky. 130, 120 S.W. (2d) 1026; *Prassas v. J. F. McElwain Co.,* 100 N.H. 209, 123 A. (2d) 157.

█ In compensation cases, an aggrieved party "may have questions of law only reviewed . . . by the supreme court." C.R.S. '53, 81-14-17. When the sufficiency of the evidence to sustain an award is questioned, we are limited by the statute to "the legal question of whether there is evidence to support the findings, and not whether the Commission has misconstrued its probative effect. The award is conclusive upon all matters of fact properly in dispute before the Commission, where supported by evidence, or reasonable inference to be drawn therefrom." *Passini v. Industrial Commission,* 64 Colo. 349, 171 Pac. 369.

█ It is a postulate of the commission's authority that it has an ample discretion in the resolution factually of the extent or degree of disability an injured workman may have sustained, and that its commensurate exercise in respect thereof removes the case from intervention by the courts. *Byouk v. Industrial Commission,* 106 Colo. 430, 105 P. (2d) 1087; *National Fuel Co. v. Arnold,* 121 Colo. 220, 214 P. (2d) 784; *Industrial Commission v. C.F. & I.,* 135 Colo. 307, 310 P. (2d) 717. In the last case referred to, the court quoted the doctrine which prevails in this state in this wise:

" 'In determining the *extent or degree of disability* of an injured workman upon the facts of each case, it is axiomatic that the Industrial Commission is vested with the *widest possible discretion* with the exercise of which the courts will not interfere. . . . Also the pre-

sumption exists that in making an award . . . the commission considered and gave due weight to all of the factors therein enumerated.' Byouk v. Industrial Commission, 106 Colo. 430, 105 P. (2d) 1087." (Emphasis supplied.)

■ In the exercise of this discretion, the commission should determine the degree of disability in terms of "industrial disability or loss of earning capacity and not mere functional disability." *Byouk v. Industrial Commission,* supra; *Wierman v. Tunnell,* 108 Colo. 544, 120 P. (2d) 638. The term "disability" has such locution in our Workmen's Compensation Act. See *The London Guar. & Acc. Co. v. Industrial Commission,* 70 Colo. 256, 199 Pac. 962.

■ To arrive at the degree of such disability the commission is required to consider and give due weight to all the factors enumerated in C.R.S. '53, 81-12-9. It is the express mandate of the statute that the commission take "into consideration not only the manifest weight of the evidence, but the general physical condition and mental training, ability, former employment and education of the injured employee." The sense of our decisions is that the degree of disability cannot be measured by physical condition alone, but the injured man's age, his industrial history, his mentality, his education, and the availability of that type of work which he can do must be taken into consideration. See *Byouk v. Industrial Commission,* supra; *Pryor v. Contino,* 103 Colo. 87, 82 P. (2d) 1101.

Disability is to be measured by the extent of the impairment at the time of, and resulting from, the injury. This is basic compensation law. See C.R.S. '53, 81-8-1 et seq. and 81-12-1 et seq. " 'The act fixed the liability when the employe was injured. That liability can be discharged only in the manner directed by the statute.' " *London Guar. & Acc. Co. v. Industrial Commission,* supra.

By the award it was determined that Tamburelli was totally and permanently disabled. This determination was supported by evidence. But it is argued that, since he had already a permanent and partial disability of 30% by reason of a previous injury and an award thereon, to permit an award based upon permanent total disability would result in a pyramiding of benefits. There are three answers to this contention.

1. By C.R.S. '53, 81-8-2, the commission is directed that:

"The fact that an employee has suffered a previous disability or received compensation therefor, shall not preclude compensation for a later injury or for death, but *in determining compensation for the later injury or death his average weekly earnings shall be such sum as will reasonably represent his average weekly earning capacity at the time of the later injury, and shall be arrived at according to and subject to the limitations in the foregoing sections.*" (Emphasis supplied.)

The quoted section does not provide for apportionment between injuries sustained. A statute practically identical with our statute was construed in *Cody v. Lewis & West Trans Mix*, 186 Kan. 437, 351 P. (2d) 4, in which case apportionment was contended for. It was there said:

"We find nothing in the provisions of the section of the statute just quoted (44-511[4]) to uphold respondent's position on the point now under consideration. Indeed our view is that, when applied to existing facts and circumstances, such section clearly indicates that since claimant had suffered a previous disability, the trial court in determining average earnings, as a basis for compensation for his later injury, had the right and duty to fix such amount as would reasonably represent his earning capacity at the time of the later injury in the employment in which he was then working. It appears from the record that, based on evidence disclos-

ing claimant was fully and satisfactorily performing all duties of the full time job to which he had been assigned at a weekly wage of $85.69, the trial court properly concluded such amount reasonably represented his earning capacity and used it as a basis for computing his compensation for the involved injury."

As pointed out by 2 Larson's Workmen's Compensation Law, states have three kinds of statutes affecting workmen who sustain successive disabilities. Most states have apportionment statutes expressly directing that the administrative body apportion disability between the prior and subsequent disabilities. Other states provide for a "special" or "subsequent injury" fund. Colorado has adopted to a very limited extent a "subsequent injury fund" covering scheduled injuries involving hands, arms, feet, legs, and eyes. C.R.S. '53, 81-12-7.

It is significant that Colorado has only this limited subsequent injury fund and has not adopted an apportionment statute. These factors, considered in connection with 81-8-2, place Colorado definitely in the ranks of those states applying the full responsibility rule. By this rule the employer who brings about the total permanent disability is answerable. This is the purport of the Kansas decision cited above.

"In the absence of an apportionment statute, the general rule is that the employer becomes liable for the entire disability resulting from a compensable accident. So, if an employee already had only one eye or leg or hand, the employer becomes liable as for total disability upon the loss of the remaining eye or leg or hand." 2 Larson 54, §59.10.

When an employer hires an employee who, by reason of a pre-existing condition or by reason of a prior injury, is to some extent disabled, he takes the man with such handicap. *Industrial Commission v. Johnson,* 64 Colo. 461, 172 Pac. 422. If, in the course of his employment, this partially disabled person receives an injury

which totally disables him, he is entitled to compensation without apportionment.

2. Permanent partial disability terminates either at a given time or when a certain sum has been paid. Permanent total disability requires payments during the lifetime of the employee. This anomalous situation would arise if we were led into holding that pyramiding of benefits has resulted by reason of the award in this case: Tamburelli, having received benefits for his 30% partial permanent disability the payments of which have probably terminated by this time, would receive an additional award of 70% partial permanent disability which will be terminable at a certain time or when a certain sum has been paid. Thus, even though permanently and totally disabled, for which he should receive lifetime payments, he receives two awards, both of which are presumptively terminable during his lifetime.

■ 3. There is no pyramiding because Tamburelli receives the same compensation, in effect, for the total permanent disability as he did for the partial permanent disability. The only difference between the total permanent disability order and an apportionment of 70% is that in the former the payments continue for life, and in the latter the payments would, in all probability, be terminable sometime before his death.

Applying the law relating to the factual situation confronting the commission, we hold that the determination of total and permanent disability was appropriate. Even were we disposed to disagree with the evaluation given the evidence by the commission, it would not afford ground for disturbing the order and award.

The judgment is affirmed.

Mr. Chief Justice Day dissents.

Mr. Justice Hall and Mr. Justice Pringle not participating.