## No. 22219.

J. C. Carlile Corporation and The Travelers Insurance Company *v.* Alice R. Antaki, Robert Ruhl Antaki, Richard Francis Antaki, Ronald James Antaki, Jeanette Marie Antaki, Fredric Joseph Antaki, Victor Nadum Antaki, Jr., and the Industrial Commission of Colorado.

(426 P.2d 549)

Decided April 17, 1967.     Rehearing denied May 8, 1967.

Wood, Ris & Hames, for plaintiffs in error.

Zarlengo, Mott and Carlin, for defendants in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Peter L. Dye, Assistant, for defendant in error The Industrial Commission of Colorado.

*En Banc.*

Mr. Chief Justice Moore delivered the opinion of the Court.

The writ of error issued in this action brings before this court for review the proceedings which resulted in a district court judgment affirming an award of benefits under the Workmen's Compensation Act. Facts pertinent to the issues herein are substantially as follows:

Prior to June 7, 1962, one Victor N. Antaki was Vice President and Chief Engineer of the J. C. Carlile Corporation. He died in an accident which occurred sometime between 8:15 P.M. on June 7, 1962, and 6:00 A.M. the following morning, at which time his body was found in an automobile owned by his employer submerged in about five feet of water in the Platte river. His surviving wife and six children filed a claim before the Industrial Commission for benefits provided by law for a death allegedly arising out of and in the course of employment of the decedent.

The only question presented for our determination on this writ of error is whether there is sufficient support for the finding of the commission that the death of Antaki was "* * * the result of an accident arising out of and within the scope of his employment * * *."

The findings of the referee, which were adopted by the Industrial Commission, contain the following:

"Decedent was employed by the respondent employer as Chief Engineer and was also Vice President of the Company. On June 7, 1962 decedent attended an important sales meeting during the late afternoon and early evening at the Company's offices with the President and the Midwest Sales Manager. They all left the Company's office about 6:00 P.M. and proceeded to the Albany Hotel where, testimony revealed, the decedent had two scotch-on-the-rocks drinks. They continued to discuss Company business while at the Hotel, and left the Hotel about 8:15 P.M. Decedent told the other members that he was going home to eat, which was confirmed by testimony from the decedent's wife. She testified he called her about that time and stated that he would be home and that she should have supper ready for him at about 9:00 o'clock P.M. This was the last time decedent was seen alive.

"When decedent left the Hotel, it was in a heavy rainstorm. From other testimony and evidence it is apparent that decedent proceeded west on Speer Boulevard, following his usual route in leaving the business district. At the approach to the bridge of the South Platte River decedent's car left the street onto the island divider, then plunged into the river between the two bridges and came to rest in the middle of the river, facing upstream.

"The decedent sustained a broken left arm and a severe head injury. [a fractured skull].

"The Denver Coroner's Office placed the time of death by drowning at about 2:00 o'clock A.M., June 8, 1962. It was their presumption that decedent sat un-

conscious in the wrecked automobile from the time of the accident until 2:00 o'clock A.M. when the rising water level from the heavy rains caused his death by drowning.

"Several fellow employees testified that decedent indicated to them that he intended to return to his desk later on in the evening; that he left his desk unlocked, table drawers opened and working papers disarranged; and that decedent customarily always locked his desk and arranged the working papers in an orderly manner when he intended to leave the office for the day; and that he worked late on many occasions."

█ There is ample evidence in the record to support the above findings relating to the activities of the decedent during the late afternoon and evening of June 7, 1962. There was also evidence to the effect that a blood alcohol test was made from a sample of blood withdrawn from the body of decedent. This test resulted in a finding of .173 mgs%.

The "Employer's First Report of Accident * * *" which was filed by the J. C. Carlile Corporation, contains the following:

"Victor N. Antaki, J. C. Carlile, President, and Ray Jackson, Midwest Sales Manager, had held an important sales meeting the late afternoon and early evening of June 7, 1962, at the Company's Offices. After the meeting, Mr. Carlile and Mr. Antaki separated shortly before 8:30 P.M., June 7, 1962, leaving in their separate Company cars from the parking lot at 18th and Curtis Streets, presumably to go home.

"It is believed Mr. Antaki, in a heavy rain, drove out 14th Street (Speer Boulevard) following his usual route to leave the Business District. At the approach to the bridge over the South Platte River, for reasons unknown, Mr. Antaki left the street and drove on the island divider. The auto plunged into the river between the two bridges, coming to rest in the middle of the

river, facing upstream. Mr. Antaki sustained a broken left arm and a severe head injury.

\* \* \*

"Mr. Antaki told a Company draftsman that he would return to the Office later and had left his desk unlocked, table drawer open and table top disarranged. Mr. Antaki always locked his desk and arranged the papers on his desk and table. He worked late on many occasions. At about 9:15 P.M., June 7, 1962, he had not returned, so N. L. Lucas and D. C. Mitchell closed his table drawer and locked the offices."

There was evidence that Antaki frequently returned to the office after normal business hours, and worked at night. His widow testified that the employer provided him with an automobile which was used mainly for the purpose of transportation to and from his work. On cross-examination in this connection the following appears:

"Q. And it is also true, is it not, that he could use this car for his own purposes if he so chose, isn't that correct?

"A. It would be possible, but he didn't. He used his own car for purposes other than business."

■ The general rule applicable to a large percentage of cases in which injuries occur to an employee while going to and from work is that such injuries are not compensable under the Workmen's Compensation Act. Special circumstances found in numerous cases have developed exceptions to this rule and under variable conditions this court has recognized exceptions to the general rule. *Electric Mutual Ins. Co. v. Industrial Commission of Colorado*, 154 Colo. 491, 391 P.2d 677; *State Compensation Insurance Fund v. Walter*, 143 Colo. 549, 354 P.2d 591; *Alexander Film Co. v. Industrial Commission of Colorado*, 136 Colo. 486, 319 P.2d 1074. For a lengthy discussion of these exceptions see Larson, Workmen's Compensation Law § 15.52, at 242-243, where citations to numerous cases will be found.

It is argued that the benefits otherwise payable to the claimants should in any event be reduced by fifty per cent due to the evidence relating to the presence of alcohol in the blood of the deceased. The persuasiveness of this defense evidence was effectively minimized on cross-examination, and under the circumstances became a matter for the consideration of the trier of the facts. We cannot say as a matter of law that error was committed in this connection. There is no evidence in the record to require a finding, as a matter of law, that intoxicants caused or contributed to the accident. No one knows what caused the accident.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE PRINGLE dissent.

MR. JUSTICE SUTTON not participating.