599 P.2d 973 (1979)
In the Matter of the Death of Richard Lee CLINE.
Sharon CLINE, claimant-widow, Petitioner,
v.
The INDUSTRIAL COMMISSION OF COLORADO, and its Director, the City and County of Denver, J. B. Services, Inc., and the State Compensation Insurance Fund, Respondents.
No. 78-959.
Colorado Court of Appeals, Div. II.
August 9, 1979.
*974 Bruno, Bruno & Bruno, Louis B. Bruno, Denver, for petitioner.
J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Louis L. Kelley, Asst. Atty. Gen., Denver, for respondent Industrial Commission of Colorado.
James A. May, R. S. Ferguson, Francis L. Bury, Denver, for respondents The City and County of Denver, J. B. Services, Inc. and The State Compensation Ins. Fund.
SILVERSTEIN, Judge.
Petitioner seeks review of an order of the Industrial Commission. She challenges the Commission's finding that her husband, Richard L. Cline, was intoxicated at the time of his fatal accident and that such intoxication was a proximate cause of the accident thus authorizing a 50 percent reduction in benefits to her. She also contends that even if the intoxication was a proximate cause of the accident, the Industrial Commission miscalculated the benefits due petitioner. By way of defense respondents assert that this review should be dismissed because petitioner's previous petition seeking administrative review by the Industrial Commission was not timely filed. We set the order aside.

I.
Disposing of respondents' procedural challenge, we note that when the Industrial Commission acted upon the petition for administrative review, it had before it the affidavits of petitioner's attorney and his two employees stating that notice of the Commission's order had not in fact been received by them. And, by ruling on the petition on its merits, the Commission impliedly accepted petitioner's allegation that notice had not been received by her attorney, thereby making the filing of the petition timely. Section 8-53-106(4), C.R.S.1973; Industrial Commission v. Martinez, 102 Colo. 31, 77 P.2d 646 (1938). Thus, review of the Commission's order by this court is proper.

II.
Petitioner contends the Industrial Commission's finding that decedent's intoxication was a proximate cause of his fatal accident was against the manifest weight of the evidence. This being a factual question, it will not be disturbed if there is substantial evidence in the record to support it. J. C. Carlile Corp. v. Antaki, 162 Colo. 376, 426 P.2d 549 (1967); Tatum-Reese Development Corp. v. Industrial Commission, 30 Colo.App. 149, 490 P.2d 94 (1971).
Richard Cline, a Denver police officer, died from injuries received in a nighttime automobile accident which occurred while he was working off-duty as a traffic supervisor at Red Rocks Mountain Park. In driving down the road to his post, he *975 swerved off a steep embankment at an unmarked curve.
Undisputed testimony revealed that the accident occurred at a very sharp, dangerous curve in the winding road; that the posted speed limit for the road was too fast for the curve; that the roadbed had been recently repaved and had no dividing lines, shoulders, guard rails, or lights; and that it was very difficult to see the curve at night.
Thomas Heath, who followed Cline down the road, and Stephen McCray, Cline's passenger at the time of the accident, each testified that Cline was not driving excessively fast and that he did not have trouble driving the car until it skidded off the curve as it was being approached by an ambulance with its red lights flashing. McCray also testified that he had seen Cline drinking beer and some kind of liquor at 9 p. m. McCray and Heath both testified Cline was somewhat intoxicated at 11 p. m., shortly before the accident, as evidenced by his speech, breath, and slowed actions, but that his intoxication had not affected his driving ability.
Based upon the autopsy results which showed that Cline had a .148 percent blood alcohol content, a forensic toxicologist testified that, in his opinion, Cline was intoxicated at the time of his death and that such intoxication was a contributing cause of the accident.
To rebut this testimony, petitioner's expert, a forensic chemist and toxicologist, testified that because the autopsy was performed seven hours after death at a time when the body would have started either to produce or absorb unascertainable quantities of alcohol, and because the blood was extracted under unknown conditions, the blood alcohol test was unreliable to establish the level of alcohol in Cline's blood at the time of the accident. Based upon the same hypothetical question asked of the other expert, petitioner's witness answered that there was no way to tell if Cline was intoxicated at the time of the accident or if his intoxication, if any, contributed to his accident.
Because the weight and credibility to be given to the testimony of the witnesses, including the experts, is a question for the Industrial Commission as trier of fact, Crandall v. Watson-Wilson Transportation System, Inc., 171 Colo. 329, 467 P.2d 48 (1970); New Jersey Zinc Co. v. Industrial Commission, 165 Colo. 482, 440 P.2d 284 (1968), we cannot say, as a matter of law, that the referee and Industrial Commission erred in finding the death to be alcohol related.

III.
As to petitioner's contention of error in the computation of the benefits awarded, we agree that the Industrial Commission misinterpreted the operation of § 8-50-103, C.R.S.1973 (1978 Cum.Supp.) and § 8-52-104(1)(c), C.R.S.1973, when it reduced the maximum death benefits award by 50 percent before subtracting federal death benefits.
Section 8-50-103, C.R.S.1973 (1978 Cum.Supp.) provides: "[T]he aggregate benefits payable for death pursuant to this section shall be reduced . . . by an amount equal to 100 percent of [federal survivors'] periodic benefits." Section 8-52-104(1)(c), C.R.S.1973, orders that the compensation awards authorized by articles 40 to 54 of the Workmen's Compensation Act be reduced by 50 percent "[w]here injury results from the intoxication of the employee."
By the plain language of the statute, federal death benefits, if any, are to be deducted from the "aggregate benefits payable for death pursuant to this section." Once the specific directives of this section have been complied with, the amount of compensation should then be reduced by 50 percent if the employee engaged in conduct proscribed by § 8-52-104, C.R.S.1973.
In McKune v. Industrial Commission, 94 Colo. 523, 31 P.2d 322 (1934), the employee was entitled to an increase in his award because of his employer's failure to carry insurance but was also subject to the 50 percent reduction in benefits for violation of the statutory directives similar to those contained in § 8-52-104, C.R.S.1973. The *976 court held that the increase in award should be computed, then the total compensation reduced by 50 percent, stating:
"It was the purpose of the act to deduct, for violation of a reasonable safety rule, fifty percent of the compensation to which an employee would have been entitled had he not violated a reasonable safety rule." (emphasis supplied)
Here, had Cline not been intoxicated, petitioner would "have been entitled to" $152.53 per week (the undisputed basis of the award), less the Social Security benefits. That remainder is the compensation which then must be reduced by 50 percent to determine the weekly benefits due the petitioner.
Although we find no error in the ruling that the award should be reduced on the basis of intoxication, we nevertheless set aside the award because of the method used in computing the reduction. The cause is remanded to the Industrial Commission for recomputation of the award in conformity with the views expressed here.
PIERCE and SMITH, JJ., concur.