CASA BONITA RESTAURANT and
Liberty Mutual Insurance
Company, Petitioners,

v.

The INDUSTRIAL COMMISSION OF
COLORADO, Director of the Division of
Labor, and Debra D. Penn, Respondents.

No. 80CA0522.

Colorado Court of Appeals,
Div. I.

Feb. 19, 1981.

Zarlengo, Mott & Zarlengo, Al Zarlengo,
Jr., Denver, for petitioners.

J. D. MacFarlane, Atty. Gen., Laura J. Reilly, Asst. Atty. Gen., Denver, for respondent The Industrial Commission of Colorado, Director of the Division of Labor.

Marlin W. Burke, Denver, for respondent Debra D. Penn.

BERMAN, Judge.

In this workmen's compensation case, employer and its insurer (petitioners) seek review of an Industrial Commission award to claimant of permanent total disability benefits. We affirm.

The record reveals that while at work on March 18, 1977, claimant, then 20 years of age, fell and injured her left knee, necessitating surgical removal of the knee cap. The insurer, admitting liability, paid claimant benefits both for temporary total disability and for permanent partial disability.

Claimant, who has a history of previous injury and surgery to her left knee, is a high school graduate. However, she has an I. Q. of only 84, with the mental development of a 13-year-old, and suffers other neurological impairments.

Claimant contested insurer's admission of liability. After the resulting hearing, the referee awarded permanent disability benefits in the amount of one-and-one-half percent as a working unit. On appeal, the Industrial Commission set aside the referee's order and awarded claimant permanent total disability benefits.

On this review, petitioners contend that the Industrial Commission erred in setting aside the referee's order, which order denied claimant permanent total disability benefits. We disagree.

Petitioners insist that the referee's findings and conclusions in this case are adequately supported by the evidence and, therefore, that they may not be overturned by the Industrial Commission. In support of this contention they cite *Breit v. Industrial Commission*, 160 Colo. 205, 415 P.2d 858 (1966).

Petitioners misread *Breit*. In *Breit* the Commission *adopted*, rather than reversed, the referee's findings. Thus, *Breit*, insofar as is germane here, stands only for the proposition that where the referee's findings are supported by the evidence, *and where the commission adopts such findings*, those findings will not be disturbed by an appellate court. Indeed, the *Breit* court repeatedly recognized that the Commission is the *ultimate* fact finder in a workmen's compensation case.

■ The Industrial Commission, as the ultimate fact finder, is not bound by the referee's findings, but may rule *de novo* on the weight and sufficiency of the evidence in a workmen's compensation case. *Harrison Western Corp. v. Claimants in re Death of Hicks*, 185 Colo. 142, 522 P.2d 722 (1974); § 8–53–106, C.R.S. 1973. And, the Commission's findings, where supported by substantial evidence, are binding upon appellate review. *In re Death of Cline*, —— Colo. App. ——, 599 P.2d 973 (1979).

The question, therefore, is whether the order here at issue is supported by substantial evidence. In this regard, petitioners argue that the Industrial Commission erred in failing to give credit to the testimony of the only orthopedic surgeon who presented evidence in the case. In essence, his testimony was that respondent could return to her work as a waitress without any restriction.

■ However, "even if the expert testimony 'were undisputed, it would not necessarily be conclusive on the fact-finding body'—the Commission." *New Jersey Zinc Co. v. Industrial Commission*, 165 Colo. 482, 440 P.2d 284 (1968). Thus, the Commission was not bound by the orthopedic surgeon's testimony.

Moreover, even were the testimony accepted it would not necessarily determine the issue of permanent total disability, for the testimony's substance goes only to claimant's orthopedic or *physical condition*. In that regard, the Industrial Commission

stated, "it is not sufficient simply to look at the physical limitations of any claimant, but in the instant case, the *overall condition* of the claimant is a determining factor." (emphasis added).

Section 8–51–107, C.R.S. 1973, which governs awards for permanent total disability, does not specify what criteria apply to the determination of such disability. But, § 8–51–108, C.R.S. 1973 (1979 Cum.Supp.), governing determination of permanent partial disability, mandates that the director shall take "into consideration not only the manifest weight of the evidence but also the general physical condition and *mental* training, *ability*, former employment, and education of the injured employee." (emphasis added).

All portions of the Workmen's Compensation Act are to be read together. *McBride v. Industrial Commission*, 97 Colo. 166, 49 P.2d 386 (1935); *Schenfeld v. Shaffer*, 29 Colo.App. 425, 487 P.2d 818 (1971). Thus, the criteria contained in § 8–51–108 may properly be applied to a determination of permanent total disability under § 8–51–107. Indeed, since "the Industrial Commission is vested with the widest possible discretion" to determine degree of disability, *Byouk v. Industrial Commission*, 106 Colo. 430, 105 P.2d 1087 (1940), the Commission, to exercise such discretion effectively, must be permitted to consider *in their entirety* "the facts of each case." *See, e. g., National Fuel Co. v. Arnold*, 121 Colo. 220, 214 P.2d 784 (1950); *Colorado Fuel & Iron Corp. v. Industrial Commission*, 151 Colo. 18, 379 P.2d 153 (1963).

Therefore, the Commission had the right to look beyond claimant's physical impairments to her "mental . . . ability," including mental impairment, in determining the issue of permanent total disability. In that regard, the Commission had available the evidence presented by claimant's examining psychiatrist, who was also a neurologist. That testimony was to the effect that, whether from organic or mental ori-

gin, claimant was unable to use her knee in the manner required by her previous work or its equivalent, and lacked the mental capacity to train for better work. On cross-examination the doctor testified in part as follows:

Q. You don't know for a fact whether she is physically able to—

A. (Interrupting) Physically and neurologically, yes, I have an opinion about that. I don't think she could really function as long as her mind says to her "that knee won't hold me up." Then, Counselor, I don't think anybody including God can get her back to functioning at that.

"[N]eurotic mental disability is as real as any other disability and, in the absence [as here] of evidence of malingering, is as much a personal injury." 1B *A. Larson, The Law of Workmen's Compensation* § 42.24 at 648. Thus, whether claimant's injury caused an organic dysfunction or, rather, precipitated a mentally-derived one, the practical result, as testified to by claimant's psychiatrist, is the same.

Colorado courts long have recognized, in workmen's compensation cases, the *objective* role mental state plays in determining a person's ability to work. *See, e. g., National Lumber & Creosoting Co. v. Kelly*, 101 Colo. 535, 75 P.2d 144 (1937). Other jurisdictions, albeit interpreting somewhat different statutory provisions, are in accord. In *Johnson v. Industrial Commission*, 5 Wis.2d 584, 93 N.W.2d 439 (1958), for example, the Wisconsin Supreme Court had to deal with the effect of evidence strikingly similar to that adduced in the instant case. In *Johnson*, "[i]t was [the psychiatrist and neurologist's] opinion to a reasonable medical certainty that [claimant] had an honest, fixed, definite and continuing belief that he was suffering pain or other physical disability which was causally connected with the injury sustained in the fall [and, as a result,] that [claimant] was 100 percent disabled at the time of the hearing . . ." The *Johnson* court held that compensation for traumatic neurosis could be awarded. *Ac-*

cord, *American Smelting & Refining Co. v. Industrial Commission,* 59 Ariz. 87, 123 P.2d 163 (1942).

As to claimant's rehabilitation prospects, her psychiatrist's report stated in part:

"[T]he patient does not seem to appreciate the totality and global nature of her neurological defects, and ... she has not done well enough to pursue some of the areas of rehabilitation that she would like to pursue. In addition, of course, the orthopedic problem which has resulted in removal of her left patella leaving her with an unstable left knee joint. I would feel that these two conditions combined and conjoin themselves to make her a rather difficult person to find employment for on the present situation.

. . . .

[S]he does not have intellectual capacity to perform some of the things she would like to do, for example, wanted to be a veterinarian or wanted to work in some sort of clerical job. She is just not able to function because of her intellectual deficits that are present. She has a poor retentive grasp, she cannot perform a mathematical summation properly. She has difficulty with memory, and in general she shows enough organic deficit that it makes her a rather limited professional and rehabilitation potential."

Also, the Senior Rehabilitation Counselor for the Colorado Department of Social Services who had responsibility for claimant's case testified as follows:

"Many of the menial jobs can be handled by the mentally retarded. But because of [claimant's] physical disability that really narrows it down to almost no options at all. In other words, the physical disability had deteriorated the condition of [claimant] in performing any type of employment."

In light of the evidence presented, the Commission found that:

"[C]laimant's mental limitations are a significant factor in determining her total disability.

. . . .

[And,] claimant's ineligibility for vocational rehabilitation service combined with the claimant's physical limitations in that she is unable to stand, walk, or climb stairs for a significant period of time suggests that the claimant is in fact 100% disabled."

The Commission's findings are supported by substantial evidence contained in testimony delivered by claimant's examining psychiatrist, the Department of Social Services' rehabilitation counselor, claimant's mother, and claimant herself. Thus, the findings are binding on this review, *Cline, supra,* despite their not being based upon expert orthopedic opinion. *See, generally, Industrial Commission v. Riley,* 165 Colo. 586, 441 P.2d 3 (1968). And, the Commission's conclusion, drawn from the findings, that claimant is permanently and totally disabled falls within the bounds of "the widest possible discretion with the exercise of which the courts will not interfere." *Byouk, supra; Colorado Fuel & Iron, supra; New Jersey Zinc Co., supra.*

Order affirmed.

COYTE and STERNBERG, JJ., concur.