Jonathan West VARGO, Petitioner,

v.

COLORADO INDUSTRIAL COMMISSION, Department of Labor and Employment Division of Labor, Division of Insurance, State of Colorado, and State Compensation Insurance Fund, Respondents.

No. 80CA0780.

Colorado Court of Appeals, Div. I.

March 12, 1981.

McKie & Associates, Kay Matsukage and Jennifer K. Brown, Denver, for petitioner.

J. D. MacFarlane, Atty. Gen., Michael Marez, Asst. Atty. Gen., Denver, for respondent Industrial Commission of the State of Colorado.

William J. Baum and James A. May, Denver, for respondents Division of Insurance and State Compensation Insurance Fund.

COYTE, Judge.

In this workmen's compensation case, claimant, Jonathan West Vargo, seeks review of an order of the Industrial Commission granting medical and temporary total disability benefits for 36 days, denying permanent disability benefits, and permitting the employer to withdraw its admission of liability retroactively. We affirm.

On June 15, 1978, claimant's employer, Colorado Division of Insurance, filed an accident report based on information provided by claimant. The report indicated that claimant broke his leg on June 6, 1978, and that he had suffered no prior accidents or illnesses. Acting in reliance on the report, the State Compensation Insurance Fund (the Fund) filed an admission of liability. After being contacted by claimant's automobile insurer concerning a claim for a June 6 accident and making further medical inquiries, the Fund filed a denial of liability in September 1978. As nearly as can be ascertained from the record, the Fund ceased payment for medical benefits but continued disability payments until claimant returned to work in January 1979.

Testimony adduced at hearing revealed the following facts. In May 1977, claimant sustained a non-compensable fracture of the tibia and fibula. The fracture failed to heal, and claimant developed an osteomyelitic infection. Claimant wore a leg cast and walked with crutches when he began work for the Division of Insurance in January 1978. Claimant's attending orthopedic surgeon, testifying for the employer, stated that he replaced the cast with a brace after x-rays indicated the possibility of a bony union at the fracture site. In May 1978, he permitted claimant to walk without the brace if pain permitted. He advised claimant that there was, as yet, no assurance that the fracture was healing. The infection was in an indolent state.

While at work June 6, 1978, claimant bumped his leg, which caused the infection to flare up and become acute. His attending surgeon testified that, from June 7 to July 13, all medical treatment was directed toward reducing the infection. In the course of treatment the surgeon discovered that while there was some fibrous union at the fracture site, there was no causal relationship between the bump and the non-union of the fracture because the fracture, in fact, had never begun to heal properly. On July 17, 1978, the surgeon performed fusion surgery to cause the bone to heal and thereby eliminate the infection. Claimant returned to work in January 1979.

Claimant's expert witness, who examined claimant only shortly before the hearing, testified that the bump aggravated both the fibrous union and the infection, and that there was an increase in the angulation of the leg bones after the fusion surgery. Claimant's attending surgeon opined that the question of increased angulation was moot because there never was a healed fracture from which to measure angulation.

Relying on the attending surgeon's testimony, the referee found that prior to the June 6 accident claimant was under active medical care for non-union of a pre-existing fracture and for indolent osteomyelitic infection. He further found that the bump exacerbated the infection, necessitating medical care, that by July 13, the infection had subsided to the same indolent status as prior to June 6, and that claimant sustained no temporary or permanent disability and required no medical care attributable to the bump after July 13, 1978. He awarded medical and temporary disability benefits through July 12, 1978. He found that the Fund's admission was filed in reliance upon material misinformation provided by claimant and declared the admission void from the date of filing. The Commission affirmed the referee's order without comment.

Claimant contends that the referee erred in finding a causal relationship only between the accident and aggravation of the infection and in failing to find permanent disability occasioned by increased angulation. We find no merit in these contentions.

■ An appellate court will not disturb the Industrial Commission's findings if they are supported by evidence. *American Metals Climax, Inc. v. Industrial Commission*, 195 Colo. 163, 576 P.2d 553 (1978). After examination of the record, we conclude that there was sufficient evidence to support the referee's finding that the accident caused only aggravation of the pre-existing infection. Inasmuch as the subsequent increase in angulation was attributable to the eventual healing of the fracture and not to aggravation of the infection, the referee was correct in denying the claim for permanent disability.

Relying on *Colorado Fuel & Iron Corp. v. Industrial Commission*, 151 Colo. 18, 379 P.2d 153 (1962), claimant argues that the referee's findings constitute an unlawful apportionment of petitioner's injury. We disagree.

In *Colorado Fuel & Iron Corp., supra*, the court ruled that where a compensable injury permanently worsened a pre-existing condition, benefits could not be apportioned between the condition as it existed previously and the condition after the accident.

Here, after the infection was reduced to its previous quiescent state, medical treatment was directed toward obviating claimant's non-compensable condition, the non-union of the fracture. Subsequent treatment of the infection was incidental to treatment of the fracture and, therefore, was non-compensable. We perceive no error in the referee's ruling.

■ Claimant contends, finally, that § 8–53–102(2), C.R.S.1973, requires an employer to continue payment pursuant to an admission of liability until ordered to stop and that such order may not be retroactive. We agree with claimant except as applied to the facts of this case.

Section 8–53–102(2), C.R.S.1973, provides in pertinent part: "Hearings may be set to determine any matter, but if any liability is admitted, payment shall continue according to admitted liability." The statute unequivocally directs that payments cannot be abrogated unilaterally. By providing for hearings to determine any matter, it permits hearings held for the limited purpose of determining whether there is sufficient evidence to permit an employer to withdraw the admission. We conclude, therefore, that payments must continue until an order is entered pursuant to such hearing.

■ This interpretation comports with the legislative intent of speedily compensating working persons who have suffered industrial accidents while protecting the employer against diverting funds to an individual who, in the light of information obtained after the admission was filed, might not be entitled thereto. *See Industrial Commission v. Baldwin,* 139 Colo. 268, 338 P.2d 103 (1959). Moreover, an admission of liability, which on its face becomes approved after thirty days if uncontested, has been construed as an award within the purview of § 8–53–119, C.R.S.1973. *See Harlan v. Industrial Commission*, 167 Colo. 413, 447 P.2d 1009 (1968).

■ There is no provision in § 8–53–102(2) or elsewhere in the statute which permits retroactive withdrawals of an admission of liability. Likewise, the statute does not provide penalties for obtaining benefits based on material misrepresentation. *Cf.* § 8–81–101, C.R.S.1973; *Industrial Commission v. Bennett*, 166 Colo. 101, 441 P.2d 648 (1968). The beneficial intent of the act, however, is predicated on the claimant's providing accurate information within the best of his knowledge. Where, as here, the evidence supports the referee's finding that claimant supplied materially false information upon which his employer and its insurer relied in filing an admission of liability, the referee is justified in declaring the admission void *ab initio*.

Order affirmed.

BERMAN and STERNBERG, JJ., concur.