**Mabel TURNER, Petitioner,**

**v.**

**CITY AND COUNTY OF DENVER; Colorado Compensation Insurance Authority; Director, Department of Labor and Employment, Division of Worker's Compensation, State of Colorado; and The Industrial Claim Appeals Office of the State of Colorado, Respondents.**

**No. 92CA2063.**

Colorado Court of Appeals,
Div. I.

Dec. 16, 1993.

Steven H. Gurwin, Denver, for petitioner.

Carolyn A. Boyd, Denver, for respondents City and County of Denver and CO Compensation Ins. Authority.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., James C. Klein, Asst. Atty. Gen., Denver, for respondents Dept. of Labor and Employment and Indus. Claim Appeals Office.

Opinion by Judge CRISWELL.

This petition by the claimant, Mabel Turner, to review a final order of the Industrial Claim Appeals Office (Panel) requires us to determine whether the so-called reemployment section of the Workers' Compensation Act, Colo.Sess.Laws 1990, ch. 62, § 8–42–110(3), at 494, as it existed prior to its repeal in 1991 (Colo.Sess.Laws 1991, ch. 219 at 1312–13), authorized an award to an injured employee based upon that employee's permanent medical impairment, even though such an award would exceed one that was based upon the employee's industrial disability. The Panel concluded that, in such an instance, the statute required the award to be based upon the extent of the employee's industrial disability and not upon the degree of medical impairment. We disagree. Hence, we set aside the Panel's order and remand the cause to it for the entry of an award based upon the extent of claimant's medical impairment.

The claimant, an elementary school teacher, suffered an admitted industrial injury when she was struck in the eye from a rock thrown by a student. As a result of the injury, claimant suffers from depression and post-traumatic stress disorder which has impaired her ability to function as a classroom teacher. However, she was returned to employment as a school counselor at her preinjury rate of pay, and she has received the usual wage adjustments.

With record support, the Administrative Law Judge (ALJ) determined that claimant had sustained a 30% permanent medical impairment as a result of her injury. Because he determined that § 8–42–110(3) was applicable, the ALJ entered an award based upon this permanent impairment even though he recognized that the claimant's earning capacity had not suffered a 30% reduction.

After reviewing the ALJ's decision, however, the Panel concluded that an award under § 8–42–110(3) was required to be limited by the extent that an injured employee's medical impairment impacted upon that employee's earning capacity. Upon the Panel's remand of the cause to him, therefore, the ALJ determined that the claimant's 30% medical impairment had resulted in only a 5% working unit disability and entered an award based upon the latter criterion. This resulted in an award to the claimant that was approximately $27,000 less than the previous award, which had been based upon the extent of her medical impairment.

Before us, the claimant does not dispute the ALJ's findings with respect to the extent either of her medical impairment or of her industrial disability. She argues, however, that § 8–42–110(3) is explicit in requiring an award to be based upon the degree of her medical impairment without regard to the extent of her industrial disability. We agree.

The reemployment statute was originally enacted in 1987. *See* Colo.Sess.Laws 1987, ch. 51, § 8–51–108(4), at 389 (recodified as § 8–42–110(3) in 1990). Prior to its adoption, benefits for the permanent effect that an industrial injury had upon an employee were generally determinable in one of two ways.

First, § 8–51–104, C.R.S. (1986 Repl.Vol. 3B) (later amended and recodified as § 8–42–107, C.R.S. (1993 Cum.Supp.)) established a "schedule" of specific injuries, generally involving the loss of limbs or parts thereof, blindness, or deafness, the exact compensation for which was set by that statute. Thus, if an employee lost an arm at the shoulder, this schedule provided that the employee was to be paid 208 weeks of compensation. And, the amount of compensation payable under this schedule was not based upon and was

not affected by the extent to which the scheduled injury diminished the employee's earning capacity. *See Matthews v. Industrial Commission,* 627 P.2d 1123 (Colo.App. 1980) (fact that employees suffering scheduled injuries do not have to prove any resulting disability, while employees suffering non-scheduled injuries are required to do so, does not result in violation of equal protection).

In contrast, if the employee suffered an injury that was not described in the schedule contained in § 8–51–104, but which resulted in a "permanent partial disability," § 8–51–108, C.R.S. (1986 Repl.Vol. 3B) (later amended and recodified as § 8–42–107, C.R.S. (1993 Cum.Supp.)), required that the extent of the employee's disability was to be determined by considering the employee's "general physical condition, and mental training, ability, former employment, and education...." It was required that the extent of the employee's disability was to be expressed as a percentage and that the amount of benefits was to be determined by considering the employee's life expectancy, the total amount of benefits the employee would have received had the employee been determined to be totally disabled, and the percentage of the employee's disability. *See World of Sleep, Inc. v. Davis,* 188 Colo. 443, 536 P.2d 34 (1975).

By judicial interpretation, an employee's "disability" under this statute has been determined to mean his or her loss of earning capacity. *Colorado Fuel & Iron Corp. v. Industrial Commission,* 151 Colo. 18, 379 P.2d 153 (1962); *Matthews v. Industrial Commission, supra.* Hence, a disability under this statute had to be based upon the employee's impairment as a "working unit." *Industrial Commission v. Vigil,* 150 Colo. 356, 373 P.2d 308 (1962).

Under these two statutes, therefore, if an employee suffered a non-scheduled injury of a permanent nature, which had no discernible effect upon his earning capacity, that employee was not entitled to receive any benefits under either the scheduled injury statute or the disability statute. *See Puffer Mercantile Co. v. Arellano,* 190 Colo. 138, 546 P.2d 481 (1975) (proof of loss of one testicle without further proof of the effect such injury had upon employee's physical capabilities provides no basis for establishing a working unit disability); *Matthews v. Industrial Commission, supra,* 627 P.2d at 1125 ("Physical impairment alone does not necessarily imply such disability, for some anatomical impairments have no material effect on a person's status in the labor market.").

On the other hand, it was certainly possible that, because of the effect that a particular physical impairment may have had upon an employee's working capacity, the percentage of an employee's disability may have exceeded the percentage of his or her physical impairment. *See Byouk v. Industrial Commission,* 106 Colo. 430, 105 P.2d 1087 (1940); *Chambers v. CF & I Steel Corp.,* 757 P.2d 1171 (Colo.App.1988).

It was in light of this system for determination of benefits for permanent injuries that the reemployment statute was enacted. That statute in its 1990 codification as § 8–42–110(3) provided, in pertinent part, as follows:

> In any case where an employer reemploys or continues the *disabled employee* at work in the employment of the employer at the employee's preinjury rate of pay and extends to the employee the usual wage adjustments, the employee's permanent partial disability award shall be *limited to permanent medical impairment or a payment under section 8–42–107* [the scheduled injury statute], *whichever is less.* (emphasis added)

Prior to the adoption of this reemployment statute, the Workers' Compensation Act had not used the term "medical impairment." In several cases construing the Act, however, the Colorado courts had distinguished between a physical "impairment" and an industrial or working unit "disability." *See, e.g., Puffer Mercantile Co. v. Arellano, supra.* And, consistent with these prior decisions, the words "medical impairment," as used in the reemployment statute, have been interpreted to mean "a total or partial loss of the physical function of a member of the body, or of the body as a whole." *Boice v. Industrial Claims Appeals Office,* 800 P.2d 1339, 1340–1341 (Colo.App.1990).

On its face, this statute appears to be clear and unambiguous—it appears to establish a separate means of establishing an employee's entitlement to permanent benefits if

the employer meets its conditions. And, if a statute is clear and unambiguous, it must be applied as written, unless such application would result in an absurdity. *Snyder Oil Co. v. Embree,* 862 P.2d 259 (Colo.1993) (construing terms "employee's preinjury rate of pay" and "the usual wage adjustments" as used in the reemployment statute).

The Panel, nevertheless, concluded that, because this statute referred to a "disabled employee," it possessed a "certain degree of ambiguity." It then concluded that, considering the purpose of the statute, proof of "*impairment of earning capacity* is a prerequisite to application of the [reemployment] statute." (emphasis supplied) We reject this analysis.

The purpose of the reemployment statute was to provide an incentive to the employer to continue to employ the injured employee. This was accomplished by substituting the concept of "medical impairment" as the basis for compensation for the previously applicable concept of industrial "disability." As a result, an award for medical impairment under this statute "will *generally* be less than a full award for medical permanent disability." *Boice v. Industrial Claim Appeals Office, supra,* 800 P.2d at 1341 (emphasis supplied). *See Fulton v. Soopers,* 823 P.2d 709 (Colo. 1992).

There may, of course, be isolated instances, such as here, in which application of the medical impairment standard will result in benefits greater than would be awarded by application of the industrial disability test. We cannot presume that the General Assembly was not aware of this fact. And, nothing within the statute provides any evidence that, in such cases, it was the legislative intent that its explicit directive to use either the medical impairment test or the statutory schedule to award benefits was to be disregarded and a wholly different standard applied.

On the contrary, the General Assembly may well have concluded that the time and expense saved by employers by the *uniform* application of the relatively simple medical impairment test for non-scheduled injuries would more than compensate for the few instances in which such a test might result in greater benefits. Indeed, in this respect, we cannot help but note that, in legislation that became effective for industrial injuries occurring on or after July 1, 1991, the General Assembly abandoned the concept of industrial "disability" for all purposes—on and after that date, all permanent partial impairment benefits are to be awarded based either on the statutory schedule or on the extent of the employee's medical impairment. *See* Colo. Sess.Laws 1991, ch. 219, § 8–42–107, at 1306–1311.

We conclude, therefore, that, when the General Assembly said that, if an employer met the conditions of the reemployment statute, an injured employee's benefits were to be "limited to permanent medical impairment or a payment under [the statutory schedule], whichever is less," it meant precisely what it said. Hence, the Panel erred in engrafting upon this explicit provision a proviso not expressed in that statute.

The order of the Panel is set aside, and the cause is remanded to it for the entry of an order consistent with the views set forth in this opinion.

PIERCE and ROTHENBERG, JJ., concur.