No. 26339

Harrison Western Corporation and Employers Fire Insurance Company v. Claimants in the Matter of the Death of Jasper C. Hicks, James M. Shaffer, Director of Labor and The Industrial Commission of Colorado

(522 P.2d 722)

Decided May 20, 1974. Rehearing denied June 17, 1974.

Zarlengo, Mott and Zarlengo, Albert E. Zarlengo, Jr., for petitioners.

Hutchinson, Black, Hill, Buchanan & Cook, Peter M. VanZante, for respondents.

John P. Moore, Attorney General, John E. Bush, Deputy, Peter L. Dye, Assistant, for Director of Labor and The Industrial Commission.

MR. JUSTICE GROVES delivered the opinion of the Court.

This is an appeal from an order of the Industrial Commission awarding death benefits under the Colorado Workmen's Compensation Act. We accepted jurisdiction from the Court of Appeals on account of a possible constitutional question. We affirm in part and reverse in part.

The facts in this case are not in dispute. Jasper C. Hicks was killed in an automobile accident when his car went off the road. The deceased had been employed by Harrison Western Corporation in Urad, Colorado, as an office manager in charge of accounting functions. It had become a customary procedure for the deceased to carry the corporation's payroll checks to its comptroller in Lakewood for signature.

On the evening and early morning prior to his death the deceased had stopped at a bar in Empire, Colorado, and consumed approximately three drinks between 10:00 p.m. and 1:30 a.m. About 6:00 a.m. that same morning the

deceased's car went off U.S. Highway 6 leaving no brake or skid marks. U.S. Highway 6 was a part of the most direct route between Urad and Lakewood. The deceased had his employer's unsigned payroll checks in his possession.

The alcohol content of the deceased's blood shortly after his death was determined to be .225%.

Upon this factual basis a referee made the following findings: that carrying the payroll checks was a benefit to the deceased's employer; that if the accident had arisen out of this delivery process, it would have occurred within the course of the deceased's employment; that the claimants failed to establish that the deceased had returned to the course of his employment at the time of his death; that the deceased's death was caused by his intoxication and, therefore, even if death benefits were due, such benefits would have to be reduced by the statutory amount of fifty percent. The referee then denied any benefits to the claimants.

In reversing the referee's order and awarding death benefits, the Commission found that the death arose out of the course of the deceased's employment and that there was insufficient evidence to conclude that the accident resulted from intoxication.

I.

█ In order to be entitled to workmen's compensation death benefits, a claimant must establish that the accident causing death arose out of and in the course of the decedent's employment. C.R.S. 1963, 81-13-2. The employer argues that the decedent departed from the course of his employment when he stopped at the bar in Empire, and that the claimants failed to show that the decedent had re-entered the course of his employment at the time of the accident.

█ The factual basis for the Commission's ruling that the accident arose out of the deceased's course of employment was as follows: The accident occurred at a point which was on the most direct route between the Urad job site and the Lakewood office; this point was also part of the most direct route between the Urad job site and the decedent's home; and the payroll checks were found in the deceased's possession. From these facts it seems that two reasonable

conclusions could be drawn. The deceased could have been driving to his home, or he could have been driving to the Lakewood office to deliver the payroll checks for signature. The Commission chose the latter alternative from which the legal conclusion properly follows that the accident arose out of and in the course of the deceased's employment. Thus we cannot say that there was insufficient evidence to support the Commission's ruling.

## II.

 Benefits under the Act must be reduced by fifty percent "[w]here injury results from the intoxication of the employee." C.R.S. 1963, 81-13-4(d). In reversing the referee's finding, the Commission determined that there was not sufficient evidence to conclude that the fatal accident resulted from the deceased's intoxication. This determination constituted an abuse of the Commission's discretion.

The following testimony was uncontroverted: That an autopsy was performed at which it was determined that the blood alcohol level in the deceased's body shortly after death was .225%; that in order to reach a blood alcohol level of .225% the deceased would have had to have consumed nine ounces of 100 proof liquor or nine twelve ounce cans of beer or some combination thereof; that such a quantity of alcohol in one's bloodstream would have "drastically impaired" one's motor reflexes involved in operating a vehicle. In light of the foregoing testimony and the absence of evidence in the record to establish an alternative cause of the accident, we hold that the Commission abused its discretion in failing to rule that the injury resulted from the intoxication of the deceased. Thus the claimants' award must be reduced by fifty percent.

## III.

 Prior to 1973 it was clear that the Commission had authority to hold hearings and make findings of fact. 1971 Perm. Supp., C.R.S. 1963, 81-14-6(2) provided:
"The commission, upon referral of a case to it by the director, or upon a petition being filed with it to review the director's or a referee's supplemental award, shall review the

entire record transmitted by the director in said case, *and, in its discretion, may hold further hearings and receive further evidence,* and shall *make its findings of fact* and enter its award thereon." (Emphasis added.)

However, the italicized portion of the statute has been deleted. Colo. Sess. Laws 1973, ch. 265, 81-14-6(2) at 930. The employer argues that the effect of this recent deletion is to remove the Commission's fact finding authority.

We cannot believe that the legislature intended, by this mere deletion in language, to strip the Commission of its general authority to hold hearings and make findings of fact. There are numerous references within the Act to the Commission's general authority to hold hearings and make factual findings. For example, 1969 Perm. Supp., C.R.S. 1963, 80-1-34 and 80-1-35 provide that, in reviewing a finding, order or award of the Director, the Commission may receive further testimony and may substitute its own finding, order or award for that of the Director. 1969 Perm. Supp., C.R.S. 1963, 80-1-9(1)(a) and (g) grants the Commission authority to "make a finding of facts and award" when it hears an appeal from any order or award of the Director. See also 1971 Perm. Supp., C.R.S. 1963, 81-14-7, 81-14-10, and 81-14-11; 1969 Perm. Supp., C.R.S. 1963, 80-1-36 and 81-14-12.

We hold that the Commission acted within its statutory authority when it entered an independent factual finding based upon the evidence received at the hearing before the referee. To hold that the Commission has no independent fact finding authority would in effect emasculate the Commission's function to that of a mere rubber stamp approving the referee's findings.

IV.

The employer argues that the Commission did not have jurisdiction to make its findings and to grant an award because the claimants failed to timely file a transcript of testimony or a petition for review. Upon the claimants' request, the referee granted an extension of time in which to file a petition for review until 30 days after the lodging of the

transcripts with the Division of Labor. Because the extension was not to a "date certain," the employer claims it was void.

We need not reach the merits of the employer's argument as the right to raise this issue has been waived. Not only did the employer fail to timely object to the granting of the extension of time, but it also acquiesced in the extension by asking the referee, after the granting of the extension, to expedite the filing of the transcripts. *See T & T Loveland Chinchilla Ranch, Inc. v. Bourn,* 178 Colo. 65, 495 P.2d 546 (1972).

### V.

▮ In its Supplemental Order the Commission remanded the case to the Director for "computation of interest" from the date the Referee's order became final. The employer argues that, since he has filed a request with the Director for relief from interest, the Commission is without authority to place such a mandate upon the Director.

1969 Perm. Supp., C.R.S. 1963, 81-13-9(2) provides that: "Every employer or insurance carrier of an employer shall pay interest at the rate of eight per cent per annum upon all sums not paid upon the date fixed by the award of the director for the payment thereof. Upon application and satisfactory showing to the director of the valid reasons therefor, said director, upon such terms or conditions as said director may determine, may relieve such employer or insurer from the payment of interest after the date of its order therefor."

As a general proposition it is mandatory that the employer or insurer pay interest on all sums not paid on the date fixed by the award. *Bourn v. T & T Loveland Chinchilla Ranch,* 32 Colo. App. 315, 514 P.2d 787 (1973). However, upon application and satisfactory showing, the Director has discretionary authority to relieve the employer or insurer from such interest payments. *Bourn, supra.* In the computation process in this case the Director may or may not see fit to relieve the employer or insurer from the payment of interest, irrespective of the direction of the Commission.

The order of the Commission granting death benefits to

the claimants is affirmed; the Commission's ruling that there was insufficient evidence to conclude that the accident resulted from the deceased's intoxication is reversed, and the cause is remanded to the Commission for modification of the award consistent with the views here expressed.

MR. CHIEF JUSTICE PRINGLE does not participate.