**Martha A. CHURCHILL, Petitioner,**

v.

**SEARS, ROEBUCK & COMPANY, and The Industrial Commission of the State of Colorado, Respondents.**

No. 85CA0744.

Colorado Court of Appeals, Div. I.

April 17, 1986.

---

Jack Kintzele, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Mary Ann Whiteside, Asst. Atty. Gen., Denver, for respondent Indus. Com'n.

Holland & Hart, Brian Muldoon, Denver, for respondent Sears, Roebuck & Co.

BERMAN, Judge.

Claimant, Martha Churchill, seeks review of a final order of the Industrial Commission which determined her degree of permanent partial disability to be five percent as a working unit. We affirm in part and set aside in part.

Claimant was employed as a mechanic for Sears, Roebuck and Company, earning $8.40 an hour, when she sustained an injury to her right knee. Claimant received temporary total disability benefits and was evaluated for vocational rehabilitation. Claimant had a high school education and had been previously employed in retail sales and limited clerical positions. The evaluation revealed that claimant had potential to pursue employment in graphic arts, sedentary mechanics, and sales.

A rehabilitation program was devised with the approval of claimant and her treating physician (Dr. Nygaard) wherein claimant was to receive on-the-job training for a position which involved a variety of domestic, bookkeeping, and clerical duties. Upon completion of the training program, claimant was to receive full time employment at a rate of $6.00 hourly.

Prior to completing the program, claimant's employment was terminated. A letter outlining the reasons therefor was sent to claimant's rehabilitation counselor. Although claimant disputes that she is to blame for some of the circumstances mentioned in the letter (lack of office skills, interest in improving, and punctuality, plus absenteeism and poor judgment), she does not contend that her termination was in any way predicated upon her physical impairments. No further vocational rehabilitation services were initiated, and at the time of the hearing, claimant had not found other employment.

Subsequently, Dr. Nygaard released claimant at maximum medical improvement; however, he imposed kneeling and lifting restrictions. He opined that the subject injury resulted in a five percent physical impairment. A second physician (Dr. Taylor), whom claimant later consulted, estimated physical impairment to be six percent. Both physicians agreed claimant was unable to return to her former employment. Sears admitted liability for five percent permanent partial disability; however, claimant contested the admission and a hearing was held.

The Commission concluded that claimant's employment in the training program was terminated for the reasons based on claimant's various acts of withdrawal from the training which were stated in the letter of termination. Because these reasons did not relate to claimant's injury, the Commission found it should determine the extent of her disability as if she had completed the program. *See* § 8–49–101(5), C.R.S. (1985 Cum.Supp.). The Commission accepted the five percent admission entered by Sears.

## I. Sufficiency of Evidence

Claimant contends there is insufficient evidence to support the Commission's findings that she failed to complete vocational rehabilitation and to support the Commission's application of § 8–49–101, C.R.S. (1985 Cum.Supp.). We disagree.

In pertinent part, § 8–49–101(5), C.R.S. (1985 Cum.Supp.) provides:

"In the event the employee voluntarily, without good cause, withdraws from such rehabilitation program, the degree of permanent partial disability shall be determined as though the employee had successfully completed the vocational rehabilitation program."

■ Here, there is ample evidence that claimant withdrew from the rehabilitation program voluntarily, without good cause. By her own testimony, claimant admits she thought she had left on mutual terms because "it wasn't working out" and she was unaware that she had been formally terminated until she read the letter from her employer. There is evidence that claimant was informed in advance of the areas and improvement necessary and made little or no effort to improve. The record reveals that no prior experience or training was necessary for claimant's position, and in fact, the program was designed to develop the necessary skills. Based on these facts, we cannot say that the Industrial Commission erred in finding unjustified withdrawal from the program.

## II. Admissibility of Evidence

Claimant next contends the letter written by claimant's employer was erroneously admitted into evidence because she was not afforded an opportunity to cross-examine its author. We disagree.

Section 8–53–115, C.R.S. (1985 Cum. Supp.) provides:

"The rules of evidence of the district court shall apply in all hearings except that medical and hospital records, physicians reports, vocational reports, and records of the employer are admissible as evidence and can be filed in the record as evidence without formal identification if relevant to any issue in the case."

■ The letter written by claimant's employer clearly is a vocational report and a record of the employer; accordingly, we perceive no error in the Industrial Commission admitting the letter into evidence.

## III. Adequacy of Findings

Claimant also contends that the five percent disability rating is manifestly inadequate when it is recognized that she had few prior skills, limited education, and now has permanent physical limitations. She further suggests that the Commission failed to give due weight to the substantial wage loss she would have suffered even had she completed the rehabilitation program. We conclude that further findings on this issue are needed.

In relevant part, the Commission found:

"1. That the claimant failed to complete the OJT Program and in fact, was terminated from the program for reasons not related to the subject injury.

2. That as a result of the claimant's failure to complete the OJT Program, the claimant's permanent partial disability should be determined as if she had successfully completed the program. *Accordingly, in the instant case, industrial disability equals physical impairment.*" (emphasis added)

■ It is unclear whether the Commission has construed § 8–49–101(5) as mandating a finding that industrial disability equals physical impairment. We read no such penalty into the statute. Rather, the

statute requires permanent disability to be determined *as if the employee had successfully completed the rehabilitation program.*

■ Here, had claimant successfully completed her program, she would have had full-time employment paying $6.00 per hour. Thus, permanent disability must be determined from that perspective. Since we are unable to determine whether this consideration was given, the matter must be remanded.

### IV. Sufficiency of Findings of Fact

Claimant next contends that the Commission erred in failing to make findings which addressed a multiplicity of inferences she asserts arise from the evidence. We do not agree.

■ It is necessary only that the evidentiary and ultimate findings be specific as to the evidence the Commission deems persuasive and determinative of the issues to be resolved. *See Crandall v. Watson-Wilson Transportation System, Inc.,* 171 Colo. 329, 467 P.2d 48 (1970). Applying this standard, we deem the findings here to be sufficient.

Claimant's remaining contentions are without merit.

That portion of the order which determined the extent of claimant's permanent partial disability is set aside and the cause is remanded for entry of findings and conclusions consistent with this opinion. In all other respects, the order is affirmed.

PIERCE and TURSI, JJ., concur.