Lloyd M. ACKERMAN, Petitioner,

v.

HILTON'S MECHANICAL MEN, INC., California Indemnity Insurance Company, Industrial Claim Appeals Office, and Director of the Division of Workers' Compensation, Respondents.

No. 95CA1051.

Colorado Court of Appeals, Div. V.

Feb. 22, 1996.

525

Steninger, Balkenbush & Free, L.L.C., John A. Steninger, Denver, for Petitioner.

Clifton, Hook & Bovarnick, P.C., James R. Clifton, Denver, for Respondents Hilton's Mechanical Men, Inc. and California Indemnity Insurance Company.

No Appearance for Respondents Industrial Claim Appeals Office, or Director of the Division of Workers' Compensation.

Opinion by Judge CASEBOLT.

Petitioner, Lloyd M. Ackerman (claimant), seeks review of a final order of the Industrial Claim Appeals Panel (Panel) that affirmed an order of the Administrative Law Judge (ALJ) ordering his compensation reduced by fifty percent pursuant to § 8–42–112(1)(c), C.R.S. (1995 Cum.Supp.) (injuries resulting from intoxication). We affirm.

While driving a van in the course of his employment with Hilton's Mechanical Men, Inc., claimant lost control and suffered compensable injuries in a one-car accident. It was undisputed that, shortly after the accident, a blood alcohol test performed upon claimant at the hospital emergency room showed .042 grams of alcohol per one hundred milliliters of blood and the presence of opiates.

Hilton and its insurer, California Indemnity Insurance Company, (collectively employer) asserted that claimant's injuries were caused by his intoxication and sought to reduce claimant's benefits by fifty percent pursuant to § 8–42–112(1)(c).

At a hearing, claimant testified that he did not know what had caused the accident. Employer offered claimant's medical records, together with two letters authored by a physician specializing in toxicology at the University of Colorado Health Sciences Center.

The physician had reviewed claimant's medical records and, in his letters, calculated claimant's probable blood alcohol level at the time of the accident, explained the adverse effects of such ethanol levels on claimant's abilities to function while driving, and concluded that the adverse effects of the ethanol in claimant's body would have contributed to, if not caused, claimant's accident.

Claimant objected to the admission of the physician's letters. Over claimant's objection, the ALJ determined that the physician's letters were admissible pursuant to statute.

After the hearing, the ALJ found that claimant's blood alcohol level was higher than 0.042% at the time of the accident and that

claimant's urine had tested positive for the presence of opiates shortly after the injury. He further found credible and persuasive the physician's opinion that claimant was mentally impaired at the time of his accident because of the alcohol and opiates and that the adverse effects of the alcohol "contributed to if not caused the motor vehicle accident." Based on these findings, the ALJ ruled that claimant's injury resulted from his intoxication and ordered, among other things, that claimant's compensation be reduced by fifty percent.

Claimant sought review of this portion of the order. The Panel concluded that the physician's letters qualified for admission as medical records because they were documents pertaining to the practice of medicine. Further, the Panel determined that the ALJ did not err in characterizing the physician's report as a "medical report." Consequently, the Panel affirmed.

## I.

■ Claimant contends that the ALJ erred in admitting the physician's letters pursuant to § 8–43–210, C.R.S. (1995 Cum. Supp.). We disagree.

Section 8–43–210 provides, in pertinent part:

> The rules of evidence of the district courts shall apply in all hearings; except that medical and hospital records, physicians' reports, vocational reports, and records of the employer are admissible as evidence and can be filed in the record as evidence without formal identification if relevant to any issue in the case.

The claimant initially argues that § 8–43–210 does not apply to the physician's letters because they are not "medical" records. He argues that the term "medical records" is uncertain as to its intended scope and may lend itself to alternative constructions. Thus, he claims, we must examine the legislative intent of this statute, the circumstances under which the statute was enacted, and the consequences of a particular construction to determine the scope of records to be admitted without foundation as "medical" records.

In reliance mainly upon statutes and case law from other jurisdictions, claimant asserts that to present evidence without formal identification as is allowed under § 8–43–210, it logically follows that such evidence must be inherently trustworthy, accurate, and reliable. He concludes that the only evidence which is inherently trustworthy and reliable in workers' compensation proceedings, and thus the only evidence that § 8–43–210 is intended to include, consists of reports and records prepared to assist in the history, treatment, examination, diagnosis, or prognosis of claimants and their injuries, and not medical records which were prepared for litigation purposes.

We conclude that the letters at issue here are "physicians' reports" within the meaning of the statute; hence, we need not determine whether the materials also qualify as "medical records."

■ Established principles of statutory construction guide our resolution of this issue. Statutes are to be construed in such a manner as to further the legislative intent for which they were drawn. And, to discern the intent of the General Assembly, we first examine the language of the statute. *Snyder Oil Co. v. Embree*, 862 P.2d 259 (Colo.1993).

■ Words and phrases should be given effect according to their plain and ordinary meaning. And, if the statutory language is clear and unambiguous, we need not resort to other interpretive rules of statutory construction. *Husson v. Meeker*, 812 P.2d 731 (Colo.App.1991).

In our view, the statutory language is clear. As pertinent here, "physician" includes "a person skilled in the art of healing; one duly authorized to treat disease; a doctor of medicine." *Webster's Third New International Dictionary* 1707 (1986). The term "report" as pertinent here includes a formal statement or account of the results of an investigation. *See Webster's Third New International Dictionary* 1925 (1986). In our view, that term necessarily includes letters that, in essence, contain the report.

■ Therefore, § 8–43–210 allows, without formal identification, the admission of any letter authored by a physician which is rele-

vant to a disputed issue in the case. *Cf. Churchill v. Sears, Roebuck & Co.*, 720 P.2d 171 (Colo.App.1986) (letter from claimant's employer concerning reasons for termination of claimant's rehabilitation is vocational report and admissible without formal identification).

There is nothing ambiguous about this language, and therefore, contrary to claimant's assertion, we do not need to resort to other rules of statutory construction to interpret it. Consequently, we need not address claimant's discussion of statutory or case law from other states.

Contrary to claimant's arguments, the General Assembly created no exceptions which made admissibility of a physician's report dependent upon either the type of physician's report being offered, *i.e.*, treating or consulting, or the reason for which the report was written. And, since the General Assembly has not explicitly created such an exception, we have no authority to infer the existence of one. *Kraus v. Artcraft Sign Co.*, 710 P.2d 480 (Colo.1985).

Furthermore, our construction of the statute is supported by a review of the legislative changes made in the statute since its adoption in 1919. *See Grover v. Industrial Commission*, 759 P.2d 705 (Colo.1988) (amendments to statute properly may be considered when determining legislative intent).

In its original version, the analogous statute did not mention the evidentiary use of any particular form of physicians' reports. *See* Colo.Sess.Laws 1919, ch. 210, § 94 at 702. In 1923, that statutory provision was amended to refer to the evidentiary use of reports of "attending or examining physicians." Colo.Sess.Laws 1923, ch. 203, § 94 at 754–755. The pertinent portion of that statute remained essentially unchanged until 1981, when it was amended to refer to reports of "attending or examining physicians or chiropractors." Colo.Sess.Laws 1981, ch. 83, § 8–53–103(2)(a) at 471.

In 1983, the analogous statute was repealed and reenacted. In the reenactment, the General Assembly deleted any reference to reports of specific classes of physicians and amended the provision to allow "physi-

cians' reports" in general to be admitted without foundation. *See* Colo.Sess.Laws 1983, ch. 79, § 8–53–115 at 421. This portion of the statute has remained unchanged since then. *See* § 8–43–210, C.R.S. (1995 Cum. Supp.).

Here, because the letters were authored by a physician, concerned the claimant's blood alcohol level, and analyzed its physical effect on the claimant, the documents were properly admitted.

## II.

■ Claimant also contends that, even if the physician's letters were properly admitted, there is insufficient evidence in the record to prove that claimant's injuries were the result of intoxication. We reject this argument.

Section 8–42–112, C.R.S. (1995 Cum.Supp.) provides, in pertinent part, that a claimant's compensation shall be reduced by fifty percent if his or her injury results from intoxication.

■ The determination of whether an accident was caused by an employee's intoxication is a question of fact. *See Baca v. Helm*, 682 P.2d 474 (Colo.1984); *Harrison Western Corp. v. Claimants in re Death of Hicks*, 185 Colo. 142, 522 P.2d 722 (1974).

■ In reaching a conclusion concerning causation, the ALJ may make reasonable inferences from the circumstantial evidence presented. *See Electric Mutual Liability Insurance Co. v. Industrial Commission*, 154 Colo. 491, 391 P.2d 677 (1964). Furthermore, it is the prerogative of the ALJ to resolve conflicts in the evidence and determine the credibility of witnesses and the probative value of the evidence. *Delta Drywall v. Industrial Claim Appeals Office*, 868 P.2d 1155 (Colo.App.1993).

■ So long as such determination is supported by substantial evidence in the record, it is binding on review. *See May D & F v. Industrial Claim Appeals Office*, 752 P.2d 589 (Colo.App.1988). Substantial evidence is probative evidence which would warrant a reasonable belief in the existence of facts supporting a particular finding, without re-

gard to the existence of contradictory or contrary inferences. *F.R. Orr Construction v. Rinta,* 717 P.2d 965 (Colo.App.1985).

Here, the claimant testified that at the time of the accident it was daylight, the weather was clear, the road was dry and straight, his van was operating properly, and he was having no problems seeing the road. He further testified that, despite his history of respiratory, blood pressure, and hand tremor problems, he had no health problems which would have interfered with his driving ability that morning. He also testified that his health problems were being controlled by medication and denied any adverse effect from his medications. The claimant further testified that he had no idea what had caused the accident.

In contrast, however, the physician opined that the adverse effects of the claimant's blood alcohol content "contributed to, if not caused" the claimant's accident. His opinion was based on the rate at which an average adult metabolizes alcohol and his calculations concerning the claimant's probable blood alcohol concentration at the time of the accident. He calculated that claimant's blood alcohol level at the time of the accident was between 0.066 percent and 0.129 percent. He stated that a blood alcohol concentration of 0.066 percent is sufficient to cause mental impairment. He further stated that blood alcohol concentrations as low as 0.02 percent may cause behavioral, psychomotor and cognitive changes, and that levels between 0.09 percent and 0.25 percent may cause a person to experience a loss of critical judgment, a decrease of sensory response, an increase in reaction time, and a loss of some muscular coordination.

The physician also analyzed the possible effect of other medications on the claimant's physical impairment as a result of his blood alcohol content and determined that they either would have had no effect or would have increased the possible effects of the ethanol.

In addition to the physician's letters, the record demonstrated that three treating and consulting physicians had made notations concerning the claimant's alcohol use and abuse up to the time of the accident.

The ALJ found the physician's opinions to be credible and persuasive, and we may not disturb this finding. Under these circumstances, the record contains substantial evidence from which the ALJ could reasonably infer that the cause of the claimant's accident was impairment resulting from his blood alcohol content. *See Harrison Western Corp. v. Claimants in re Death of Hicks, supra.* The ALJ's inference also supports his determination that the proximate cause of the claimant's injuries was intoxication. We thus may not interfere with the ALJ's reduction of the claimant's compensation pursuant to § 8–42–112(1)(c).

In so holding, we reject claimant's arguments that either the ALJ or the Panel improperly placed the burden of proof upon him to prove that he was not intoxicated. The record does not support this argument.

We further reject claimant's assertion that the physician's letters are incredible as a matter of law and should be disregarded. Contrary to claimant's arguments, the letters show that the physician did not attempt to act outside his area of expertise and reconstruct the events leading up to the accident. Rather, he simply ascertained the role that ethanol played in causing the accident. Furthermore, we do not find his letters to be internally inconsistent or incompatible; rather, the conclusions in his second letter logically flow from those in his first.

Accordingly, the Panel's order is affirmed.

ROTHENBERG and TAUBMAN, JJ., concur.