Barbara SEARS, Petitioner,

v.

PENROSE HOSPITAL and The Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 96CA0909.

Colorado Court of Appeals.
Div. IV.

Feb. 20, 1997.

Rehearing Denied March 27, 1997.

Certiorari Denied Sept. 15, 1997.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1996 Cum.Supp.)

Steven U. Mullens, P.C., James A. May, Steven U. Mullens, Colorado Springs; Wilcox and Ogden, P.C., Ralph Ogden, Denver, for Petitioner.

Ritsema & Lyon, P.C., Susan K. Reeves, Colorado Springs, for Respondent Penrose Hospital.

No Appearance for Respondent The Industrial Claim Appeals Office.

Opinion by Judge DAVIDSON.

Barbara Sears (claimant) petitions for review of a final order of the Industrial Claim Appeals Office (Panel) denying her request for penalties against Penrose Hospital (employer) for its failure to pay a medical bill. We affirm.

Claimant sustained two admitted industrial injuries in 1992 and 1993 which rendered her permanently and totally disabled. Employer was ordered to pay continuing medical benefits, provided that they were reasonable and necessarily related to the industrial injury.

Upon the recommendation of an authorized physician, claimant was tested for HIV as a means to evaluate her neuromuscular disorder. The results were negative. Employer received the bill for the HIV test on December 13, 1993, and the adjuster denied payment of the bill on December 22, 1993. The basis for the denial was the adjuster's belief that the HIV test did not appear to be work-related.

The Administrative Law Judge (ALJ) concluded that the employer's denial of the bill was in compliance with Department of Labor and Employment Rule XVI(K)(2)(b), 7 Code Colo. Reg. 1101–3, which concerns the written notification required for contested medical expenses. The ALJ also determined that there was a legitimate controversy concerning the compensable nature of the test based upon the physician's testimony and correspondence between the parties' attorneys and the physician indicating that the test was not work-related.

Thus, the ALJ determined that employer acted reasonably in denying payment of the bill, and that claimant failed to prove that penalties should be assessed against employer. In so ruling, the ALJ applied the negligence standard applicable to the penalty provisions in § 8–43–304(1), C.R.S. (1996 Cum. Supp.). *See Colorado Compensation Insurance Authority v. Industrial Claim Appeals Office,* 907 P.2d 676 (Colo.App.1995) (imposition of a penalty under the predecessor to § 8–43–304(1) is governed by the objective standard of negligence). Nevertheless, because the test was diagnostic in nature and therefore compensable, the ALJ ordered employer to pay the bill.

The Panel affirmed the ALJ's order. However, the Panel noted that, in the 1991 amendments to the Workers' Compensation Act (Act), the General Assembly enacted a

penalty statute that applied specifically to the failure to pay medical benefits. *See* § 8–43–401(2)(a), C.R.S. (1996 Cum.Supp.). Thus, the Panel determined that the specific penalty provision in § 8–43–401(2)(a) supersedes the general penalty provision in § 8–43–304(1).

Since this claim involves a 1992 injury, the Panel concluded that § 8–43–401(2)(a) applied here. Furthermore, the Panel determined that a subjective willfulness standard applied under this statute, as opposed to the objective negligence standard applicable to § 8–43–304(1). Applying this willfulness standard to the findings of fact made by the ALJ, the Panel concluded that the ALJ had implicitly determined that employer's actions were not willful and that the ALJ did not err in denying penalties.

### I.

Claimant contends that the Panel erred in concluding that only the specific penalty provision in § 8–43–401(2)(a) applied here. She argues that the ALJ could apply the general penalty provision in § 8–43–304(1), but that the ALJ erred in concluding that she did not prove, under the applicable negligence standard, that penalties should be assessed. In short, claimant contends that the ALJ applied the correct standard, but arrived at the wrong result, while the Panel concluded that the ALJ used the wrong standard, but arrived at the right result. We agree with the Panel.

### A.

Section 8–43–304(1) provides for the imposition of a penalty upon any party who:

> violates any provision of articles 40 to 47 of this title, or does any act prohibited thereby, or fails or refuses to perform any duty lawfully enjoined within the time prescribed by the director or panel, *for which no penalty has been specifically provided,* or fails, neglects, or refuses to obey any lawful order made by the director or panel. . . .

(emphasis added)

In contrast, § 8–43–401(2)(a) provides that: "If any insurer or self-insured employer will-fully delays payment of medical benefits for more than thirty days or willfully stops payments such insurer or self-insured employer shall pay a penalty to the division of eight percent of the amount of wrongfully withheld benefits."

Statutes should be interpreted to effect the legislative intent. And, to discern the intent of the General Assembly, we first examine the language of the statute. Words and phrases should be given their plain and ordinary meaning, and if the statutory language is clear and unambiguous, it is unnecessary to resort to the rules of statutory interpretation. *Ackerman v. Hilton's Mechanical Men, Inc.,* 914 P.2d 524 (Colo.App. 1996).

The clear and unambiguous language of § 8–43–304(1) provides that, where the gravamen of the disputed conduct is a violation of the Act or a violation of a rule enacted by the director, the penalty set forth in § 8–43–304(1) applies only when the Act does not create a specific penalty for the violation. We therefore reject claimant's contention that the ALJ could choose between the two statutes. If the General Assembly had intended to create two penalties for the late payment of medical benefits, § 8–43–401(2)(a) would provide that it is in addition to the penalty authorized by § 8–43–304(1). *Cf.* § 8–42–108, C.R.S. (1996 Cum.Supp.) (compensation for disfigurement is "in addition to all other compensation benefits provided in" article 42).

Nor are we persuaded by claimant's argument that it was employer's failure to investigate which formed the basis for her request for penalties and that, therefore, the failure to perform that duty was an independent basis for the imposition of penalties under § 8–43–304(1). The scenario leading to the request for benefits was employer's failure to pay for the HIV test, and it is § 8–43–401(2)(a) which specifically requires the payment of medical benefits within 30 days. Claimant's assertion notwithstanding, an underlying act or omission, such as a failure to investigate, is necessarily encompassed in the broader question whether the employer willfully delayed or stopped payment.

B.

Having concluded that the specific penalty provision applies, we next determine the applicable legal standard.

◼ Penalties under § 8–43–401(2)(a) are awarded for the willful delay in or cessation of payment of medical benefits. In the context of the Act, the term "willful" has been defined to mean acting with deliberate intent. *City of Las Animas v. Maupin,* 804 P.2d 285 (Colo.App.1990). Therefore, we conclude that the failure to pay medical benefits does not subject employer to penalties unless the failure is the result of its deliberate intent.

Furthermore, § 8–43–401(2)(a) limits the imposition of penalties to "wrongfully" withheld benefits. The term "wrongful" means "unlawful" or "unjust." *Webster's Third New International Dictionary* 2642. In our view, applying this plain and ordinary meaning of the word to § 8–43–401(2)(a) does not create an absurd result. *See Snyder Oil Co. v. Embree,* 862 P.2d 259 (Colo.1993) (words and phrases in statute should be given their plain and ordinary meaning unless the result is absurd). Therefore, we conclude that employer is not subject to the imposition of penalties unless its failure to pay medical benefits timely is deliberate and unjust.

◼ Although the ALJ here did not consider employer's conduct under the willfulness standard, she did find that employer acted reasonably under the circumstances. This finding of reasonableness precludes a finding of willfulness. *See generally Terror Mining Co. v. Roter,* 866 P.2d 929, 933–934 (Colo.1994) ("willful and wanton misconduct connotes acts or omissions that extend beyond mere unreasonableness"). Thus, we agree with the Panel's conclusion, that based on the ALJ's findings, the employer's conduct could not have been unjust or unlawful. *See Koch Industries, Inc. v. Pena,* 910 P.2d 77 (Colo.App.1995) (Panel may affirm an ALJ's order when the right result is reached for the wrong reason).

II.

Claimant's remaining contention is that the ALJ's findings are unsupported by substantial evidence. We disagree.

◼ Whether the insurer's actions were deliberate and unjust is a question of fact for the ALJ. *See City of Las Animas v. Maupin, supra.* Accordingly, we must uphold the ALJ's factual determinations if supported by substantial evidence and the plausible inferences drawn therefrom. Section 8–43–308, C.R.S. (1996 Cum.Supp.); *Colorado Compensation Insurance Authority v. Industrial Claim Appeals Office, supra.* Furthermore, we must defer to the ALJ's assessment of the sufficiency and weight of the evidence. *Ackerman v. Hilton's Mechanical Men, Inc., supra.*

◼ Here, substantial evidence, consisting of the physician's reports, supports the ALJ's finding that employer's failure to pay for the HIV test was based upon a legitimate controversy. Although claimant argues that employer did not sufficiently investigate its liability for the bill, we conclude that substantial evidence also supports the ALJ's finding that employer took reasonable action. Therefore, the Panel did not err in affirming the ALJ's denial of penalties.

The order of the Panel is affirmed.

NEY and CASEBOLT, JJ., concur.