**DWORKIN, CHAMBERS & WILLIAMS, P.C., jointly; and Gregory K. Chambers, individually, Petitioners,**

v.

**Susan J. PROVO, Respondent.**

**No. 02SC792.**

Supreme Court of Colorado, En Banc.

Dec. 1, 2003.

Rehearing Denied Jan. 12, 2004.

Larry N. Harris, Littleton, Colorado, Attorney for Petitioners.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, Colorado, Steven U. Mullens, P.C., Steven U. Mullens, Colorado Springs, Colorado, Attorneys for Respondent.

Pinnacol Assurance, Brandee DeFalco Galvin, Denver, Colorado, Attorneys for Amicus Curiae Pinnacol Assurance.

Justice BENDER delivered the Opinion of the Court.

## INTRODUCTION

In this case, we hold that an attorney does not violate a specific workers' compensation penalty statute by advising an insurer to violate a lawful order, even if the attorney acts with fraud or malice. To reach this holding, we address two related issues: first, whether an attorney fails, neglects, or refuses to obey a lawful order in a workers' compensation setting by advising an insurer not to comply with the order; and second, whether the workers' compensation penalty statute extends to a claim against an attorney for fraudulently or maliciously advising an insurer to violate a lawful order.

Section 8-43-304(1) of the Workers' Compensation Act of Colorado allows fines to be imposed against "[a]ny employer or insurer, or any officer or agent of either, or any employee, or any other person who ... fails, neglects, or refuses to obey any lawful order...."

Interpreting this statute, the court of appeals held that the insurer's attorneys could not fail, neglect, or refuse to obey an order not directed at them. *Provo v. Indus. Claim Appeals Office,* 66 P.3d 138, 145 (Colo.App. 2002). However, the court of appeals concluded that as "agents" of the insurer, the attorneys could be liable under the statute if they acted with fraud or malice. *Id.*

We hold that, in a workers' compensation setting, an attorney who lacks the authority to bind an insurer does not violate a lawful order by advising the insurer to violate the order, even if the attorney acts with fraud or malice. We construe the relevant provision of § 8-43-304(1) as penalizing only those persons with the authority to bind the insurer with respect to actions required by a lawful order and whose actions violate the order.[1] In the absence of evidence to the contrary, an attorney does not bind an insurer in such actions. Thus, an attorney typically is not an "agent"—one with the authority to bind a principal—within the meaning of the statute. The plain language of this statute omits any mention of attorneys acting in an advisory capacity, instead penalizing only those who fail, neglect, or refuse to obey a lawful order. We also hold that the statute by its express terms does not extend to a claim against an attorney who allegedly acts with fraud or malice in advising an insurer to violate a lawful order because the statute does not expressly provide for such a claim.

Thus, we affirm the court of appeals in part and reverse it in part. We affirm the court of appeals' holding that the attorneys did not fail, neglect, or refuse to obey a lawful order under the terms of the statute.

1. Clearly, if a lawful order is directed at an attorney, the attorney's violation of the order could result in penalties under the statute.

However, we reverse the court of appeals' holding that the statute may apply to an attorney who acts with fraud or malice. Accordingly, we remand this case to the court of appeals with instructions to return it to the Industrial Claim Appeals Office to dismiss the claim against the attorneys.

## I. FACTS AND PROCEEDINGS BELOW

Claimant Susan J. Provo was seriously injured on the job at Atmel Corporation. Atmel's workers' compensation insurer was Industrial Indemnity Company. Attorney Gregory K. Chambers and his firm Dworkin, Chambers and Williams, P.C. (collectively, the "attorneys") initially represented the insurer regarding Provo's workers' compensation claim.

As a preliminary matter, we note that our review of the record does not reveal any evidence that the attorneys had the authority to bind the insurer with respect to the payment of Provo's benefits. The attorneys did not act on behalf of the insurer, which ultimately decided whether to pay for Provo's treatment. At all times, the attorneys acted in an advisory capacity to the insurer regarding Provo's benefits.

At the center of this dispute is a 1998 order by an administrative law judge (ALJ) requiring the insurer to pay for Provo's chiropractic treatment. The order required the insurer to cover "all [of Provo's] reasonable and necessary medical expenses" for a particular chiropractor, then specifically found that "*[o]ccasional chiropractic treatment* ... *is especially reasonable and appropriate* ... for a claimant with such severe injuries and permanent consequences" (emphasis added). The order, which was not appealed, left no doubt that the insurer was obligated to pay for Provo's chiropractic treatment.

Chambers advised the insurer that the 1998 order did not require it to cover Provo's chiropractic treatment. He also informed the insurer that if it denied coverage, Provo would be compelled to return to court, which could force a final settlement of her claim. A letter from Chambers to the insurance adjuster reveals his extreme misinterpretation of the order as well as his stonewalling tactics:

> [The ALJ] leaves open the issue as to whether any of the [chiropractic] treatment ... would be considered reasonable and necessary. Given the fact that [the insurer's doctor] has already indicated it would not be reasonable and necessary, we have a basis for denying any treatment in the future from [the chiropractor].
>
> In denying treatment, this would obviously result in [Provo] filing another Application for Hearing for payment of this medical treatment. At that time, I would recommend that we add the issue of permanent partial disability so that we can close this claim out. Hopefully, at that time, opposing counsel will be more interested in settling the claim.

In the letter, Chambers appeared to be aware that his interpretation of the order was strained, since he thought that denying coverage would "obviously" force Provo to return to court. Chambers' letter exposes his strategy of engaging in hardball legal maneuvering with a worker who suffered from serious and permanent injuries.

Although the insurance adjuster interpreted the order as obligating the insurer to cover chiropractic treatment, the insurer followed Chambers' advice and refused to pay Provo's chiropractic bills for a period of about six months.

Provo then moved for sanctions against the insurer under a different section of the Workers' Compensation Act, § 8-43-401(2)(a), 3 C.R.S. (2003),[2] which allows a claimant to seek penalties against an insurer who willfully denies payment of benefits.[3]

2. Unless otherwise noted, the statutory provisions cited in this opinion were in effect in identical form at all times relevant to this suit.

3. In the usual civil litigation setting, a court has the authority to impose contempt sanctions for failure to comply with an order. *See* C.R.C.P. 107 (2003). However, an ALJ possesses no such authority. § 8-43-207(1)(p), 3 C.R.S. (2003). Accordingly, Provo was forced to pursue statutory remedies.

Under this provision, the Division of Workers' Compensation receives eight percent of the amount of benefits wrongfully denied.[4] After a hearing, an ALJ found that the 1998 order clearly required the insured to cover Provo's chiropractic treatment and that the insurer's refusal to pay was "wrongful, deliberate, and intentional," and "willful, unreasonable, and legally unsupportable." Accordingly, the ALJ awarded to the Division the statutory eight percent penalty, amounting to less than $100.

In her brief to this Court, Provo explains that she did not pursue a claim against the insurer under § 8–43–304(1), 3 C.R.S. (2003) (the "penalty statute") because the controlling interpretation of this statute at the time of her penalty hearing against the insurer required her instead to seek penalties exclusively under the specific provision of § 8–43–401(2)(a). *Sears v. Penrose Hospital,* 942 P.2d 1345 (Colo.App.1997).[5] Thus, Provo pursued a penalty statute claim against the attorneys rather than the insurer. Arguing that the attorneys were subject to the penalty statute because they were "agents" of the insurer, Provo sought the statutory rate of $500 per day against the attorneys for violating the 1998 order. The attorneys moved to dismiss the claim, asserting that they could not be held liable for violating an order that was directed only at the insurer. The ALJ denied the attorneys' motion to dismiss.

In a subsequent proceeding, an ALJ reconsidered the attorneys' motion to dismiss Provo's penalty statute claim. Reasoning that the attorneys could not violate an order that was not directed at them, the ALJ granted the attorneys' motion to dismiss Provo's penalty statute claim. On appeal, the Industrial Claim Appeals Office (the "Panel") affirmed the dismissal.

Provo appealed to the court of appeals, which held that the attorneys did not fail, neglect, or refuse to comply with the order but that they could be liable under the penalty statute if they acted with fraud or malice. *Provo,* 66 P.3d at 145.

As a preliminary matter, the court of appeals concluded that the attorneys were subject to the penalty statute as "agent[s]" or "any other person[s]" under the language of the statute. *Id.* at 144.

Interpreting the clause of the penalty statute that permits sanctions against those who fail, neglect, or refuse to obey any lawful order, the court reasoned that an attorney could be liable only by violating "an order that specifically directs the attorney to act." Because the 1998 order to pay chiropractic benefits was directed only to the insurer, the court of appeals held that the attorneys had not violated the order or the penalty statute. *Id.* at 145.

The court of appeals then held that the penalty statute could apply to the attorneys if they acted with fraud or malice and remanded the case to the Panel for further

4. § 8–43–401(2)(a) provides in part:

After all appeals have been exhausted or in cases where there have been no appeals, all insurers and self-insured employers shall pay benefits within thirty days of when any benefits are due. If any insurer or self-insured employer willfully delays payment of medical benefits for more than thirty days or willfully stops payments such insurer or self-insured employer shall pay a penalty to the division of eight percent of the amount of wrongfully withheld benefits.

5. In *Sears,* the court of appeals considered whether a claimant may recover under the penalty statute even though penalties are elsewhere specifically provided under the Workers' Compensation Act. In that case, the court of appeals held that the limiting phrase in the penalty statute, "for which no penalty has been specifically provided," required it to apply a more specific provision instead of the penalty statute. In *Holliday v. Indus. Claim Appeals Office,* 997 P.2d 1212 (Colo.App.1999), the court of appeals extended the *Sears* court's reasoning to hold that the limiting phrase in the penalty statute applies to failing, neglecting, or refusing to obey an order, the same category of conduct at issue in this case. We later overruled *Sears.* In *Holliday v. Bestop, Inc.,* 23 P.3d 700 (Colo.2001), we held that because the limiting phrase "for which no penalty has been specifically provided" appears before the disjunctive "or" in the penalty statute, it does not modify the subsequent clause regarding failing, neglecting, or refusing to obey a lawful order. We note that if this Court's decision in *Holliday* had controlled at the time of Provo's motion for sanctions against the insurer, she could have recovered up to the statutory maximum of $500 per day from the insurer for the period during which it denied payment for her chiropractic treatment.

proceedings to determine whether the attorneys acted with fraud or malice. *Id.*

The attorneys now appeal to us, arguing that they are not liable to Provo under the penalty statute.[6]

## II. ANALYSIS

### An Attorney without the Authority to Bind an Insurer Does Not Fail, Neglect, or Refuse to Obey a Lawful Order by Advising an Insurer to Violate the Order

The attorneys argue that because the 1998 order was not directed at them, they did not violate the order. The attorneys also contend that unlike failing, neglecting, or refusing to obey an order, advising an insurer not to comply with a lawful order does not violate the penalty statute. Provo responds that as "agent[s]" or "any other person[s]" under the penalty statute, the attorneys are expressly subject to the statute. Provo asserts that by advising the insurer not to comply with the 1998 order, the attorneys themselves failed, neglected, or refused to obey the order. We agree with the attorneys and hold that when the attorneys advised the insurer not to comply with the 1998 order, they did not violate the order or the penalty statute.

The General Assembly intended the Workers' Compensation Act to provide for the quick and efficient delivery of benefits to injured claimants at a reasonable cost to employers. The Act was meant to avoid the "necessity of any litigation" through the parties' "mutual renunciation of common law rights and defenses." § 8-40-102, 3 C.R.S. (2003).[7] By participating in the workers' compensation system, parties waive their common law rights and defenses.[8] § 8-40-102; § 8-41-104, 3 C.R.S. (2003).

We review the court of appeals' interpretation of the penalty statute de novo. *Gorman v. Tucker,* 961 P.2d 1126, 1128 (Colo. 1998). Our primary task in construing a statute is to give effect to the General Assembly's intent. *People v. Luther,* 58 P.3d 1013, 1015 (Colo.2002). If the language of a statute is clear, we apply the plain meaning of the statute. *Vaughan v. McMinn,* 945 P.2d 404, 408 (Colo.1997). However, where the language of a statute is subject to conflicting interpretations, we turn to the legislative history of the statute to determine the General Assembly's intent. *State v. Nieto,* 993 P.2d 493, 501 (Colo.2000).

The provision of the penalty statute relevant to this appeal authorizes fines of up to $500 per day to be imposed on a broad class of persons who fail, neglect, or refuse to obey a lawful order. The provision reads as follows:

> Any employer or insurer, or any officer or agent of either, or any employee, or any other person who ... fails, neglects, or refuses to obey any lawful order made by the director or panel ... shall also be punished by a fine of not more than five hundred dollars per day for each such offense....

§ 8-43-304(1).[9] In our view, the penalty statute appears to be subject to conflicting inter-

6. We granted certiorari on the following issue:

   Whether a party in a workers' compensation case can pursue a claim for penalties under the Workers' Compensation Act of Colorado against the attorney of the opposing party for allegedly causing a violation of an order by the opposing party, where the underlying order was directed only at the opposing party, and where the attorney was not subject to the order.

7. The section reads in full:

   **8-40-102. Legislative declaration.** (1) It is the intent of the general assembly that the "Workers' Compensation Act of Colorado" be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation, recognizing that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike.

8. The Act requires parties to release "rights to any method, form, or amount of compensation or determination thereof or to any cause of action, action at law, suit in equity, or statutory or common-law right, remedy or proceeding." § 8-41-104, 3 C.R.S. (2003). By cataloguing an exhaustive list of common law remedies, the General Assembly appears to have intended the parties' waiver of common law rights and defenses to be comprehensive. Thus, claimants and insurers alike are limited to statutory remedies.

9. In its entirety, this subsection of the penalty statute reads:

   **8-43-304. Violations—Penalty—offset for benefits obtained through fraud.** (1) Any em-

pretations and can reasonably be construed in a manner that is consistent with both parties' arguments. On one hand, to the extent that an attorney can bind an insurer, an attorney could be considered an "agent" or "any other person" who may fail, neglect, or refuse to obey an order. On the other hand, an attorney lacking the authority to bind an insurer with respect to actions required by a lawful order does not fail, neglect, or refuse to obey the order by advising an insurer to violate it. Because no legislative history exists for the penalty statute, we turn to the derivation of its language. Aside from some minor word changes, the language we interpret is the same as when the statute was originally enacted in 1919.[10]

Reviewing the language of the penalty statute, we note that the statute covers a broad class of persons who fail, neglect, or refuse to obey a lawful order. This class of persons includes "[a]ny employer or insurer, or any officer or agent of either, or any employee, or any other person." However, the class is modified by the phrase "who ... fails, neglects, or refuses to obey any lawful order." Thus, only those persons who are capable of violating a lawful order, and whose actions constitute a failure, neglect, or refusal to obey the order,[11] are subject to the statute.

By definition, an agent is one with authority to "act on behalf of ... and bind" a principal. *Black's Law Dictionary* 62 (7th ed.1999)(defining "agency"). *See also Restatement (Second) of Agency* § 1 (1958)("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall *act on his behalf* and subject to his control, and consent by the other so to act.")(emphasis added). Absent evidence of some other arrangement, the attorney's role in benefits decisions is to interpret administrative orders regarding benefits and to advise insurers whether to pay. In contrast, the insurer ultimately makes and acts on the decision of whether to pay benefits. Although an attorney's advice may influence an insurer's decision to pay or deny benefits, in the typical case an attorney who advises an insurer regarding benefits decisions does not bind or act on behalf of the insurer. Thus, an attorney lacking the ability to bind an insurer is not included within the term "agent" as used in the penalty statute.[12]

ployer or insurer, or any officer or agent of either, or any employee, or any other person who violates any provision of articles 40 to 47 of this title, or does any act prohibited thereby, or fails or refuses to perform any duty lawfully enjoined within the time prescribed by the director or panel, for which no penalty has been specifically provided, or fails, neglects, or refuses to obey any lawful order made by the director or panel or any judgment or decree made by any court as provided by said articles shall be subject to such order being reduced to judgment by a court of competent jurisdiction and shall also be punished by a fine of not more than five hundred dollars per day for each such offense, seventy-five percent payable to the aggrieved party and twenty-five percent to the subsequent injury fund created in section 8-46-101.

10. The penalty statute was adopted by the General Assembly in 1919. Although the amount that a violator may be fined has changed—the original statute imposed a maximum penalty of $100 per day—the relevant language has remained the same. The original provision penalizes "any employer or insurer, or any officer or agent of either, or any employe [sic], or any other person ... [who] shall fail, neglect or refuse to obey any lawful order...." 1919 Colo. Sess. Laws 747. Although the 1919 session laws repealed and replaced Colorado's original 1915 workers' compensation system, a section of the 1915 laws could be construed as a predecessor to the penalty statute. The section allowed a court to compel obedience by contempt proceedings "[i]n the case of failure or refusal of any person to comply with the order of the commission." 1915 Colo. Sess. Laws 575.

11. In addition to having the authority to bind the insurer to the actions required by the lawful order, an officer, agent, employee, or any other person must act in violation of the order—i.e., fail, neglect, or refuse to obey the order—to be liable under the statute.

12. Although neither Provo nor the court of appeals analyzed the "any other person" class in detail, we are not persuaded that an attorney falls into this class. First, this reasoning disregards the limiting clause "who ... fails, neglects, or refuses to obey any lawful order." We conclude that only those with authority to bind the insurer with respect to the actions required by a lawful order can fail, neglect, or refuse to obey such an order. Second, the argument that the "any other person" language includes any of the insurer's advisors, whether or not they have the authority to bind the insurer, would create liabil-

Supporting this construction of the word "agent" in the penalty statute is the subsequent phrase that penalizes an agent who "fails, neglects, or refuses to obey any lawful order." Failure, neglect, and refusal are forms of noncompliance that can be engaged in only by those with the ability to bind or act on behalf of an insurer. "Fail" and "neglect" both mean to leave undone, while "refuse" means to withhold compliance.[13] These definitions support our interpretation that an attorney who merely acts in an advisory capacity does not fail, neglect, or refuse to obey a lawful order. Unlike those with the authority to bind an insurer, an attorney who advises an insurer to violate an order to pay benefits does not leave undone or withhold compliance regarding the order.

We note that the penalty statute does not include "attorneys" among those persons who are capable of violating the statute. Other labor statutes adopted around the time that the original penalty statute was enacted do create liability for both "attorneys" and "agents."[14] While labor statutes adopted around the same time as the penalty statute distinguish between "attorneys" and "agents," the penalty statute itself includes only the term "agent." In addition, two years after enacting the original penalty statute, the General Assembly adopted a labor statute that expressly created liability for advising and encouraging noncompliance with the labor statutes.[15]

As these labor statutes show, by adding "attorneys" to the class of persons covered by the penalty statute or by penalizing persons for "advising" and "encouraging" the violation of an order, the General Assembly could have created liability for attorneys acting in an advisory capacity. The General Assembly's omission of these terms from the penalty statute indicates its intent to penalize only those with the authority to bind the insurer with respect to the actions required by a lawful order who fail, neglect, or refuse to obey such an order.

Thus, we conclude that the penalty statute does not extend to the conduct of an attorney who merely acts in an advisory capacity in a workers' compensation setting. Because the statute only penalizes those persons with authority to bind an insurer with respect to the actions required by a lawful order and whose actions violate such an order, we hold that an attorney does not fail, neglect, or refuse to obey a lawful order by advising an insurer to violate the order.

### The Penalty Statute Does Not Include a Claim against an Attorney who Fraudulently or Maliciously Advises an Insurer to Violate an Order to Pay Benefits

Next, we address the court of appeals' holding that the penalty statute authorizes the imposition of fines against an attorney who acts with fraud or malice. Relying on the common law fraud-malice theory,[16] the

ity not intended by the General Assembly. At oral argument, Provo conceded that the statute should not be read so broadly as to create liability for all of an insurer's advisors, such as a doctor who recommends against specific treatments required by an administrative order.

13. "Fail" is defined as "to leave undone." *Webster's Ninth New Collegiate Dictionary* 445 (1989). Similarly, "neglect" connotes "to leave undone or unattended to esp. through carelessness." *Id.* at 791. Finally, "refuse" signifies "to withhold acceptance, compliance, or permission." *Id.* at 991.

14. 1911 Colo. Sess. Laws 486 ("agents or attorneys"); *id.* at 487 ("[a]ny person or persons, company, corporation, society, association or organization of any kind doing business in this State, as well as his, their, or its *agent, attorneys,* servants or associates")(emphasis added).

15. 1921 Colo. Sess. Laws 1230–31 (penalizing "any and all officers, agents, and representatives [for] *aiding, abetting, advising, encouraging, participating, inciting or acquiescing in such violation* [of the labor statutes] ...." (emphasis added)).

16. Under the common law, an attorney is generally not liable to third parties for advice rendered to a client. *See Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver,* 892 P.2d 230, 239 (Colo.1995)("A party must prove the existence of an attorney-client relationship between the complaining party and the lawyer in order to prevail on a claim of legal malpractice."). *See also* Joan Teshima, *Attorney's Liability, to One Other than Immediate Client, for Negligence in Connection with Legal Duties,* 61 A.L.R.4th 615 (1988). However, a narrow exception to the rule against malpractice claims by non-clients exists where an attorney acts with fraud or malice. *Mehaffy,* 892 P.2d at 235 (stating in dicta that "[g]eneral-

court of appeals construed the penalty statute to include a cause of action against an attorney who acts fraudulently or maliciously and remanded this case to the Panel for a hearing on whether the attorneys acted fraudulently or maliciously.

The attorneys argue that the penalty statute does not include a claim against an attorney who fraudulently or maliciously advises an insurer to violate a lawful order in a workers' compensation setting. Provo responds that an attorney is liable to an opposing claimant under the penalty statute when the attorney's advice is fraudulent or malicious.

The penalty statute by its express terms says nothing about attorneys who act fraudulently or maliciously with respect to a lawful workers' compensation order. Under our rules of statutory construction, a statute in derogation of the common law such as the penalty statute "may not be enlarged by construction, nor its application extended beyond its specific terms." *Robinson v. Kerr,* 144 Colo. 48, 52, 355 P.2d 117, 119–20 (1960). Extending the penalty statute to a class of persons and a category of conduct not specifically covered by the statute violates this rule of construction, especially because insurers and claimants who participate in the Workers' Compensation Act waive their common law rights and remedies. *See* § 8–41–104. Accordingly, we hold that Provo cannot recover under the penalty statute, even if she could prove the attorneys acted with fraud or malice.

### Application

Although we do not condone Chambers' actions, his conduct does not form the basis of a claim under this specific penalty statute in the workers' compensation setting. The record reveals no evidence that Chambers had the authority to bind the insurer regarding the payment of benefits. Thus, Chambers was not an "agent" under the language of the statute, and he did not fail, neglect, or refuse to obey the 1998 order to pay benefits. Instead, Chambers advised the insurer, however inappropriately, not to pay, which does not warrant penalties under the statute.

Even if Provo could prove that Chambers acted with fraud or malice, the penalty statute does not apply because the statute by its express terms does not extend to acts of an attorney who fraudulently or maliciously advises an insurer to violate a lawful order.[17]

### Conclusion

For the reasons stated above, we affirm the court of appeals in part and reverse it in part. We remand the case to the court of appeals with instructions to return it to the Panel to dismiss Provo's claim against the attorneys.

ly, an attorney is not liable to a non-client absent a finding of fraud or malicious conduct by the attorney").

17. Although the penalty statute does not reach an attorney's conduct under these circumstances, we do not address the question of whether such conduct could support a claim that Chambers violated the Colorado Rules of Professional Conduct. *See, e.g.,* C.R.C.P. 1.1 (2003) (requiring professional competence); 8.4 (prohibiting conduct that is prejudicial to the administration of justice or that violates accepted standards of legal ethics).